## C. FOGARTY v. THE JUNCTION CITY PRESSED BRICK COMPANY.

1. BURNING BRICK — *Noxious Gases* — *Nuisance.* When a company engaged in burning brick upon leased land uses a process in burning that generates noxious gases, that are wafted upon the adjacent lands of the lessor, injuring and destroying a growing crop of wheat, this is such a nuisance that the lessor may maintain an action to recover damages by reason thereof.

2. DAMAGES, *No Estoppel to Claim.* A landowner who leases land to a company for the manufacture of pressed brick, and the company

uses a process in burning that generates noxious gases, that injure and destroy his growing crops, is not estopped from claiming damages for the injury occasioned by the nuisance because he leased the land for that purpose, as he had a right to presume that the process used would be a reasonable and lawful one.

*Error from Geary District Court.*

ACTION by *Fogarty* against the *Junction City Pressed Brick Company*, to enjoin defendant from using coal and other material injurious to plaintiff's crops, and for damages.   At the November term, 1889, a demurrer to the petition was sustained, and plaintiff prosecutes a writ of error.   Other material facts appear in the opinion.

*Jno. E. Hessin*, for plaintiff in error :

It is a well-settled doctrine that any trade or business lawful in itself which materially injures the property of others or affects their health or renders the enjoyment of life uncomfortable is a nuisance. *McKeon v. See*, 51 N. Y. 307; *Seaman v. Benedict*, 63 id. 568; *Huckenstine's Appeal*, 70 Pa. St. 102; *Bradford v. Turnley*, 31 L. J. Q. B. 286, hold that where a man by burning brick on his own land causes so much annoyance to another in the enjoyment of his rights and to the neighborhood in general that he has made out a *prima facie* cause of action, and that it was no answer that the act done was done in a proper and convenient place and was a reasonable use of the land.   The gist of the complaint was, that the burning of brick caused many noxious fumes to arise, creating sickness, etc. *Carey v. Leadbetter*, 13 C. B. N. S. 470; *Watters v. Selfe*, 4 De Gex, 315; *Rex v. White*, 1 Burr. 333; *Commonwealth v. Kidder*, 107 Mass. 388; *Benden v. Treadwell*, 31 L. J. Ch. 893; *Pollock v. Lester*, 11 Hone, 266; *Penn's L. Co. Appeal*, 96 Pa. St. 116; *Dennis v. Eckhorn*, 3 Gratt. 190; 1 High, Inj., § 777; Kerr, Inj. in Equity, p. 375, § 19; *Cleveland v. Gaslight Co.*, 5 C. E. Green, 20; *Foot v. Clifton*, 22 Ohio St. 247; *Jones v. Hannovan*, 55 Mo. 462; *Phillip v. Phillip*, 4 N. J. L. 208; *People v. Lead Works*, 82 Mich. 47;

*Bushnell v. Robinson,* 62 Iowa, 540; *Shires v. Oliver,* 50 id. 571; *Prince v. Green,* 11 Atl. Rep. 794.

Under the circumstances, the plaintiff had the right to rely upon the belief that the defendant would use the most approved methods in burning brick, and would not conduct its business in such a way as to work injury to the plaintiff's property. After the lease had been signed between the parties, and the defendant brick company had entered into the enjoyment of its lease, it seems to me that the position which the parties then occupied is in no way different from that in which one party maintained a nuisance on the land adjoining another. *Sturges v. Bodgren,* L. R. Ch. 865; *Smith v. Phillips,* 8 Phila. 10. See, also, *Central Rld. Co. v. English,* 73 Green, 366; Cooley, Torts (2d ed.), 720.

*J. R. McClure,* for defendant in error:

There is no averment in the petition that bituminous coal was not the ordinary and proper kind of fuel used in the manufacture of brick. It is a matter of common knowledge that it is used not only for this purpose, but for generating heat and steam for a variety of necessary and useful purposes in this state; and it is a remarkable fact that this is the first instance in the courts of this state when any known injury has resulted to crops from poisonous gas produced by burning bituminous coal. Under the demurrer, the defendant admits that the plaintiff's wheat was so injured.

If the brick plant had been erected upon the land of the company without the consent or acquiescence of the plaintiff, and the method of making and burning brick prosecuted in a lawful manner and in the ordinary way, with the exercise of proper care, and some unforeseen and inevitable damage resulted to the property of another, under the authorities, at least in this country, the company would not be liable. 5 Am. & Eng. Encyc. of Law, 68–75, and authorities cited in notes; 2 Shearman & R. Neg., § 700; *Radcliff's Executors v. Mayor of Brooklyn,* 4 N. Y. 195; *Lossee v. Buchanan,* 51 id. 476; *Thurston v. Hancock,* 12 Mass. 220.

The case of *K. P. Rly. Co. v. Butts*, 7 Kas. 308, sustains the principle that no liability attaches in the use of one's own property unless damage was occasioned by some wrongful or negligent act. See, also, *Emerson v. Gardiner*, 8 Kas. 452; *M. K. & T. Rly. Co. v. Davidson*, 14 id. 349; *K. P. Rly. Co. v. Brady*, 17 id. 380; *L. L. & G. Rld. Co. v. Cook*, 18 id. 261; *Sweeney v. Merrill*, 38 id. 216.

In view of the fact that bituminous coal is the ordinary fuel used in this state, and in many other states, for every purpose required in generating heat and steam, and, as our experience fails to show any serious injury to crops or vegetation in the vicinity where it is burned, negligence would not be presumed, when proper care and diligence are exercised. The damage sustained by the plaintiff in this case may be imputed to some unforeseen and extraordinary cause, a *vis major* or the act of God, and for which no one can be held accountable.

The plaintiff, by his contract and conduct, is estopped from maintaining this action. He leased the land to the company for the express purpose of burning brick. A valuable consideration was paid him for the use of the land. The defendant went into possession of the premises, erected its works, expended money in machinery, necessary buildings and appliances, and was operating its plant before any objection was made by the plaintiff.

The lease of the property carried with it whatever was essential to its use for the purpose for which it was rented, and if the company has not violated any of the conditions of the contract, it is clear, under every principle of equity, that the plaintiff has no remedy. In the absence of an express contract, if the works had been constructed with the implied consent of plaintiff, equity would not restrain their use, although they proved injurious. *Hulme v. Sheve*, 4 N. J. Eq. (3 Green), 116; Bigelow, Estop. 638, and cases cited in notes.

If the plaintiff was ignorant of the methods required in making brick, and desired information, it was his place to

seek it. And the company can surely not be held responsible for his ignorance or negligence. 2 Pom. Eq. Jur., § 810.

Opinion by SIMPSON, C.: The plaintiff in error filed his petition in the court below, and the material allegations are as follows: That the said defendant, the Junction City Pressed Brick Company, is a corporation created by and existing under and by virtue of the laws of the state of Kansas, and engaged in the business of burning brick, at Junction City in said county; that said plaintiff is now and has been for a long period of time the owner and in the possession of the following-described real estate in the said county of Geary and described as follows, to wit: Special section number 9, and also lots numbered 7 and 8, all in township number 12 south, of range 6 east; that at the time and times hereinafter mentioned the said plaintiff was in possession of said real estate except a small tract of about two acres leased to the said defendant company as hereinafter stated; that said land has been cultivated in fall wheat for several years last past, and was sowed to fall wheat, in the fall of 1888; that said plaintiff had growing upon said land, in the season of 1888 and 1889, —— acres in fall wheat which, in the spring of 1889, was growing and in good condition on said land owned and possessed by the said plaintiff; that on or about the 1st day of August, 1888, the said defendant brick company leased from the plaintiff about two acres of said land, for the period of one year, with option to renew said lease from year to year for five years; said lease to commence on the 1st day of August, 1888; said defendant company was to have the use of the water power owned by the said plain- tiff, and known as Fogarty's mill, to run one Eureka brick press; the rental was of $100 per month; said lease was upon further condition, that said defendant company was to carefully and properly manage and control the power so to be supplied, and in no way to interfere with or injure the property rights of the said plaintiff, and to commit no injury on the said premises of the said plaintiff during the existence of said lease. A copy of said lease is hereto attached, marked "Exhibit A."

At the time of making said lease, the plaintiff was un-
acquainted with the methods to be used by the said defendant
brick company in burning brick, and was not informed by
the said defendant company whether it would use bituminous
coal or wood in burning its kilns.    The said defendant
company went into possession of said two acres of land and
erected kilns thereon, and during the season of 1889 burned
several kilns of brick thereon.    In burning said kilns of
brick, said defendant company, by its employés and agents,
used bituminous coal in considerable quantities, placed in
spaces left in the kilns among the unburned brick; and also
in the flues left in said kilns for the purpose of burning said
kilns.    By the methods used by the said defendant company,
and by the fuel used, to wit, bituminous coal, during the
burning of said kilns a very considerable quantity of corro-
sive gas, called sulphuric acid gas, was generated, and, having
been compressed to a certain degree, when allowed to escape
from and above said kilns, was carried up by draft and dis-
seminated above the kilns of the said defendant company and in
the direction of the wind, for quite a distance, and over and
upon the growing wheat of the plaintiff.    Said sulphurous
acid gas, so generated in the burning of said brick kilns by
the use of bituminous coal, was and is injurious to vegetation
of all kinds, and particularly growing wheat.    This poison-
ous gas, when carried upon the wind, falls upon plants in
minute amounts, and, when the blades and leaves are damp,
the gas is absorbed and vegetation blighted.    During the
months of April, May, and June, 1889, the smoke and poison-
ous gas from the kilns of the said defendant company, im-
pregnated with sulphurous acid gas produced by the use of
bituminous coal, was carried from the said kilns of the de-
fendant company and settled over and upon the growing
wheat of the said plaintiff upon the above-described premises,
and thereby destroyed and injured the grain then forming on
the stems of said wheat, and so blighting said wheat by said
poisonous gas settling upon said crop, thereby destroying 40
acres of said wheat, of the value of $770.    In addition to

said 40 acres being destroyed so that it was a total loss, 60 acres of said wheat was greatly damaged and injured by said smoke and gas from said kilns, so that it was almost worthless, to the damage of the said plaintiff in the sum of $1,230, in the aggregate damages to plaintiff in the sum of $2,000, by means of and from the effects of the said poisonous gases, generated in and coming from the said defendant's brick kiln. By reason of such acts of the defendant company in the use of bituminous coal in burning its said brick kilns, the plaintiff has suffered great damage in the loss of his crop of wheat. If the said defendant company continues the use of bituminous coal in burning its said kilns, as it threatens to do, it will work great and irreparable loss and damage to the said plaintiff, and to the nuisance of the said premises of the said plaintiff. On or about the 16th day of July, 1889, the plaintiff requested the defendant company to remove said brick kilns from said premises, and to abate said nuisance, but it has not done so; but said defendant company still maintains said brick kilns, and is still engaged in burning brick, by the use of bituminous coal as fuel, which, if continued, will kill vegetation and the crop which plaintiff is desirous of sowing upon said premises. If said defendant company continues the use of bituminous coal as fuel in burning its said kilns, the plaintiff will be unable to cultivate said premises or derive any benefit therefrom; and if said nuisance is continued the plaintiff must inevitably suffer great and irreparable damages, and his property thereby be greatly depreciated in value.

The plaintiff therefore prays for a judgment against the said defendant company for the sum of $2,000, his damages so as aforesaid sustained, and for a decree upon the final hearing of this case perpetually enjoining the defendant company from using bituminous coal or other combustible material which will generate poisonous gas injurious to vegetation and crops growing upon the plaintiff's premises, while burning its said brick kilns, and for such other and further relief as in equity he may be entitled to, and for the costs of suit.

EXHIBIT "A."

"I, C. Fogarty, of Junction City, Kas., hereby lease to the Junction City Pressed Brick Company, of the same place, for the term of one year, with the option on the part of said company to renew said lease from year to year for five years, said lease to commence on the 1st day of August, 1888, the following-described premises and right of water power, to wit: Two acres of land on the north side of the public road leading from Sixth street, Junction City, to the bridge over the Smoky Hill river, and on the west side of said river, near the banks thereof, as the same has been selected and staked off by said company; also the right of attachment to and use of the water power now owned by said C. Fogarty that is known as 'Fogarty's mill,' on said Smoky Hill river, for running one Eureka brick press, the amount of power to run said press and machinery being estimated at 30 horse power; all expenses and costs of making such attachment to be paid by said company. And the said C. Fogarty further agrees to give the right-of-way for a railroad switch on and over any land owned by him from the line of the Union Pacific or Missouri Pacific railroads between Junction City and the plant of said company, near his mill, as aforesaid. The said Junction City Pressed Brick Company agrees to pay to the said C. Fogarty, for the rental of said premises and water power as aforesaid, at the rate of $100 per month for each and every month or part of month said water power is used; said rental to be paid on the first of each and every month, the first payment to commence on the 1st of September, 1888.

"It is expressly agreed and understood by the parties hereto, that if, for any reason not the fault of the said C. Fogarty, the said water power should fail or become insufficient to supply the amount of power required by said company, that no claim for damages shall be incurred or maintained against the said C. Fogarty by said company. It is further agreed, that said company shall carefully and properly manage and control the power supplied as aforesaid, so as to in no way interfere with or injure the property or rights of said C. Fogarty, and to commit no injury or waste on his lands during the time of the existence of this lease. It is further expressly understood and agreed, that at any time it is so determined by said company it shall have the right to remove off said leased premises all the property and improvements placed thereon, and to leave the said premises and water power in

the same condition as when it took possession thereof, usual wear and tear alone excepted.

"In witness whereof, the said parties hereunto set their hands and seal, this 30th day of July, 1888.

C. FOGARTY.<br>JNO. K. WRIGHT, <i>Pres. P. B. C.</i>"

Afterward, the defendant in error filed a demurrer to the petition, for the reason that said petition does not contain sufficient facts to constitute a cause of action against said defendant. . Upon argument thereof in the court below, the demurrer was sustained, and the plaintiff not desiring to amend his petition, but being willing to stand upon the same, the court rendered a judgment in favor of the defendant for costs, and against the plaintiff, to which ruling of the court the plaintiff at that time excepted.

I. The question here is, Does the petition state a cause of action? Every allegation contained therein is admitted by the demurrer. The improper use of a certain kind of coal, that produced the destroying gas; that the business could be just as successfully carried on by the use of wood, or another kind of coal, that would not produce the noxious gas; the deadly effect of this peculiar gas on the growing wheat crop of the plaintiff; the ignorance of the plaintiff of the manner of conducting the business and the agencies to be employed; the destruction of the growing wheat by this gas generated in the burning kilns of the brickyard, and every other material fact necessary to constitute a cause of action, if one can legally exist, are all to be accepted as established facts for the purposes of this inquiry. There is a line of decisions of courts of last resort in this country and elsewhere, that hold that an action for damages can be maintained under the facts set forth in this petition. Many of the cases so holding are cited in *Campbell v. Seaman*, 63 N. Y. 568. The essence of the decision in that case is that—

"Where one manufacturing brick upon his lands uses a process in burning by which noxious gases are generated, which are borne by the winds upon the adjacent land of his

neighbor, injuring and destroying trees and vegetation, this is a nuisance, and the party injured may maintain an action to recover damages, and to restrain the use of the process complained of."

Early and modern English decisions are cited; the case of *Huckenstine's Appeal*, 70 Pa. St. 102, is noticed; and the following cases in which useful industries, which produce smoke or noxious gases, or vapors or odors, were declared nuisances, are relied upon as being analogous: *Catlin v. Valentine*, 9 Paige, 575; *Peck v. Elder*, 3 Sandf. Ch. 129; *Taylor v. The People*, 6 Park. Cr. R. 352; *Davis v. Lambertson*, 56 Barb. 480; *Hutchins v. Smith*, 63 id. 251; *Whitney v. Bartholomew*, 21 Conn. 213; *Cooper v. Randall*, 53 Ill. 24; *Rex v. White*, 1 Burrows, 337; *Cooke v. Forbes*, L. R. 5 Eq. Cas. 166; *Sampson v. Smith*, 8 Sim. 272; *Tipping v. Smelting Co.*, 4 B. & S. 608. The theory of all these decisions is, that every one is bound to make such a reasonable use of his own property as to not occasion unnecessary annoyance or damage to his neighbor. If he makes an unreasonable or unlawful use of it, so as to produce material injury or great annoyance to his neighbor, he will be guilty of a nuisance to his neighbor, and the law will hold him responsible for the consequent damage. Of course, all we now say is upon the assumption that the petition alleges the facts as they will appear at the trial. A different state of facts may call for the application of another and totally distinct rule of action.

II. The second contention in support of the ruling below is, that the plaintiff in error is estopped by the terms of his lease, and by his conduct, from maintaining this action; the line of argument being that the lease carried with it whatever was essential to its use for the purpose for which it was rented. And this is true to the extent of its reasonable and lawful use, consistent with the rights of the neighborhood; but the gist of the complaint is, that while burning brick is a lawful business, the burning is not being done in a reasonable manner, with reference to the rights of adjacent landowners. If, at the time he made the lease, the plaintiff in error knew

the process of burning that would be employed, he would not be heard to complain of it; but he alleges in his petition that at the time he made the lease he was unacquainted with the methods to be used. He had a right to presume that these would be reasonable and lawful. See generally, upon this branch of the inquiry, the cases of *Sturges v. Bridgman,* Ch. Div. 865; *Smith v. Phillips,* 8 Phila. 10, and *Central Rld. Co. v. English,* 73 Ga. 366.

We recommend that the judgment be reversed, and the cause remanded, with instructions to overrule the demurrer to the petition.

By the Court: It is so ordered.

All the Justices concurring.