No. 34,571

Edward Asmann et al., *Appellants*, v. Glenn Masters and The Prudential Insurance Company of America, *Appellees*.

(98 P. 2d 419)

Opinion filed January 27, 1940.

*O. W. Helsel, P. D. Gardiner* and *J. R. Mayall*, all of Wichita, for the appellants.

*Benjamin F. Hegler, W. R. Glass, M. P. Shearer* and *George L. Adams*, all of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal by hotel owners from a judgment denying a temporary injunction against the operator of a dance hall located near the hotel and which was so noisily conducted in the late hours of the night that the hotel's guests could not sleep and in consequence the hotel was losing patronage.

The hotel concerned is the Hamilton, which was the leading hostelry in Wichita for a generation. It is situated at the northeast corner of the intersection of Main and English streets. The dance hall is on the second floor of a business building situated southeast of the hotel at a distance of about seventy feet. Both structures are situated in a "light industrial" district, as classified in the city's zoning ordinance.

The defendant, Glenn Masters, is the lessee of the dance hall. He operates it under a permit issued by the city government. He also sells beer on the premises, as licensed by public authority.

The dance hall runs until midnight four nights each week, and to one o'clock a. m. on Friday and Saturday nights. The dance music is of the "jazz" variety, produced by the use of trombones, trumpets, saxophones, drums and cymbals. A nickelodeon furnishes music while the orchestra is resting, and a vocalist who carols through a megaphone or public address system is also employed.

The defendant insurance company is impleaded in the action as owner of the dance-hall property. It fitted up the second story of its business building for a dance hall at considerable expense because there was apparently no other way it could be made to produce an income.

Issues were joined by suitable pleadings, and on plaintiff's application for a temporary injunction evidence was heard at length, at the conclusion of which the trial court made findings of fact and conclusions of law, which, in part, read:

### "FINDINGS OF THE COURT

"10. The said dance hall and bar is operated from 9:00 to 12 p. m., except on Fridays and Saturdays, when the hours are from 9:00 to 12:00 p. m. for the dance and bar, and the dance alone to 1:00 a. m. . . .

"11. The defendant Masters, in the operation of said dance hall, employs various bands and orchestras, some of which are of colored personnel, for the playing of dance music, which orchestras and bands have from four to eight pieces, consisting of slide trombones, trumpets, saxophones, drums, cymbals,

etc. The usual type of music played is what is commonly known as jazz music. When said music is not being played by the band or orchestra, defendant has played an electrical music device known as a nickelodeon, which emits sounds not as loud as those from the orchestra.

"12. During the dances conducted and operated by the defendant Masters, the windows of the dance hall are open, especially during warm weather, and from said dance hall the music from the orchestra and from the nickelodeon disturbs the partons of the hotel and of the Kasenberg apartments, and the plaintiffs have received complaints from their guests and some of the guests have left the hotel for other lodgings, due to the noise and disturbance from the dance hall.

"13. Unbeknown to the defendants, patrons of said dance hall have occasionally spiked soft drinks with alcohol and have been seen drinking whisky brought upon the premises by said patrons, but defendant Masters refuses admittance to his dance hall of intoxicated persons.

"15. Defendant Masters has in the past employed a vocalist who sings through a megaphone or public address system, which singing is of such volume of tone as to prevent plaintiffs and their guests from sleep during the hours of 9 to 12 p.m. and 1 a.m.

"16. It is the opinion of the police department, as expressed by the dance-hall supervisor and other witnesses in this case, that the said dance hall is properly operated and that said dance hall is operated in substantially the same manner as other dance halls supervised by the city.

"17. The defendant Masters employs two persons whose business it is to keep order at the dance hall and to see that no one violates the law by bringing in intoxicating liquor. These two persons hold special commissions as deputy sheriffs, and have power to make arrests.

"18. Market street, on which the dance hall building is located, and Main street, upon which the hotel fronts, are main thoroughfares running directly through the principal business part of the city. . . .

### "Conclusions of Law

"1. The dance hall now being operated by the defendant Masters is being operated in a lawful manner and does not constitute a nuisance.

"2. The defendant, The Prudential Insurance Company of America, has a lawful right to rent its property for the purpose of a public dance.

"3. Since the plaintiffs' hotel is located not only in a business district, but in a business district zoned as a light industrial district, persons occupying the hotel for sleeping purposes have no right to expect the quiet which they would have if the hotel were located in a zone confined to residences, apartment houses, rooming houses and hotels.

"4. The injunction should be denied."

Judgment was entered accordingly and plaintiffs appeal, assigning various errors, but mainly against the net result.

It will be noted that the trial court found that the music of the orchestra, and from the nickelodeon and the singing of the vocalist through a megaphone or "public address system," especially during

warm weather when the windows of the dance hall were open, did disturb the patrons of the hotel, and did prevent plaintiffs and their guests from sleep until midnight and sometimes until 1 o'clock a. m.; and that some of plaintiffs' guests had left the hotel for other lodgings "due to the noise and disturbance from the dance hall."

How, then, can the trial court's conclusions of law and judgment denying injunctive relief to plaintiffs be sustained?

It is argued in behalf of appellees that a dance hall is not a nuisance per se. Quite so. But like many another legitimate business it may be so conducted as to constitute either a public or private nuisance. Instances can readily be gleaned from our own reports where a perfectly legitimate and useful business has been adjudged to be a nuisance and suppressed by injunction—because of the manner in which it was being conducted, or on account of its unsuitable location, or because of some aggravating circumstance of which the public, or some private individual peculiarly affected, had a right to complain. Typical of these were the Junction City brick kiln, *Fogarty v. Pressed Brick Co.*, 50 Kan. 478, 31 Pac. 1052; the Kansas City cancer hospital, *Stotler v. Rochelle*, 83 Kan. 86, 109 Pac. 788; the Topeka private lunatic asylum, *State v. Lindsay*, 85 Kan. 79, 116 Pac. 207; one of several oil-refining pollution cases, *Helms v. Oil Co.*, 102 Kan. 164, 169 Pac. 208; the Harper City horse and mule market, *Winbigler v. Clift*, 102 Kan. 858, 172 Pac. 537; the Rosedale rock crusher, *Gilbert v. Construction Co.*, 110 Kan. 298, 203 Pac. 1113; the Eureka dog kennel, *The State, ex rel., v. Stillwell*, 114 Kan. 808, 220 Pac. 1058; the El Dorado and Wellington funeral homes, *Leland v. Turner*, 117 Kan. 294, 230 Pac. 1061, and *Hatcher v. Hitchcock*, 129 Kan. 88, 281 Pac. 869; the Leavenworth creamery station, *Alster v. Allen*, 141 Kan. 661, 42 P. 2d 969; and the El Dorado sewage-disposal case, *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798.

In *Alster v. Allen*, supra, this court affirmed a judgment enjoining the operation of a creamery station because as conducted in the nighttime it disturbed the sleep of some near-by residents of what was not an exclusively residential district. We held:

"Although the operation of a creamery station is inherently a lawful and useful business, nevertheless by reason of the manner in which it is conducted or the place in which it is located it may be a nuisance to the residents of the immediate vicinity, and it may be enjoined as a nuisance when the noises of handling milk cans, the grinding of trucks, and the voices of its employees at

unseasonable hours before daylight disturb the plaintiffs so that they cannot sleep." (Syl. ¶ 2.)

This rule is in full accord with lawbook doctrine. In 46 C. J. 699, it is said:

"A dance hall is not a nuisance. It is not classified as a nuisance per se, and it is not per se a public nuisance. But a dance hall may become a nuisance by reason of surrounding circumstances, as for instance, by reason of the character of the locality in which it is operated, entitling an adjoining owner or occupant to injunctive relief, although such hall or pavilion is orderly and well regulated as a place of amusement. It may become a nuisance by the manner in which it is conducted. . . . Whether or not it is a nuisance is a question of fact. . . ."

See, also, 20 R. C. L. 416 *et seq.;* 2 Cooley's Blackstone, 3d ed., Book III, 18.

In *Feeney v. Bartoldo,* (N. J. Ch.) 30 Atl. 1101, it was held that the playing of a piano, accompanied by dancing and loud noises in a saloon until 10 and 11 o'clock at night, to such an extent that residents of the neighborhood were prevented from sleeping, was a nuisance and warranted the issuance of a preliminary injunction restraining the use of the piano after 9 o'clock.

In *Bielecki v. City of Port Arthur,* (Tex. Civ. App.) 2 S. W. 2d 1001, the plaintiff who conducted a dance hall sought to enjoin the city from interfering with it. The supreme court affirmed the judgment denying the injunction, and in the course of the opinion it was said:

"Dance halls, as such, have not been prolific of litigation. The decisions seem to be that in itself a dance hall is not a nuisance, but can acquire that character from the locality in which it is operated. . . . in *Com. v. Cincinnati, etc.,* 139 Ky. 429, 112 S. W. 613, 18 L. R. A., n. s., 699, Ann. Cas. 1912B, 427, it was held that a dance hall may become a nuisance if not conducted with proper decorum. The court said:

" 'While it is true that dancing is frequently an innocent amusement, and drinking may be engaged in without becoming a nuisance, yet if the dancing and drinking are accompanied by swearing, and being drunk, making loud noises, and otherwise misbehaving, there can be no doubt that such acts will constitute a nuisance.'

"Circumstances making dance halls nuisances have been discussed in the following cases taken from 19 A. L. R. 1443; *Cahm v. State,* (1895) 110 Ala. 56, 20 So. 380; *Beard v. State,* (1889) 71 Md. 275, 17 A. 1044, 4 L. R. A. 675, 17 Am. St. Rep. 536; 8 Am. Crim. Rep. 173; *Com. v. Cardoze,* (1875) 119 Mass. 210; *Brown v. State,* (1877) 2 Tex. App. 189; *Callaghan v. State,* (1896) 36 Tex. Cr. R. 536, 38 S. W. 188. Illustrating the judicial trend, we quote as follows from *Feeney v. Bartoldo,* (N. J. Ch.) 30 A. 1101:

" 'That the defendant has a right to the ordinary and proper use of a piano in his saloon, and that his customers have a right to dance to the music as expressed by such instrument, there can be no doubt. There is no distinction between citizens in this respect. Every citizen is permitted to possess himself of the instrument, and also to enjoy a dance. But it is equally well settled that every citizen, in the exercise of his individual rights in the use of his property, is limited to such use as will not interfere with the reasonable rights of others in the enjoyment of their property.' " (p. 105.)

In *Grantham v. Gibson*, 41 Wash. 125, 83 Pac. 14, 3 L. R. A., n. s., 447, the action was by the lessee of a hotel and rooming house to enjoin the operation of a "tonophone" and "orchestrion," which were mechanical musical instruments which defendants kept running in connection with their shooting gallery. The hotel was first in point of time. Plaintiff alleged, and his evidence was held sufficient to prove, that the operation of those musical instruments had driven away some fourteen of his hotel patrons, and that if not abated the remainder of his patrons would leave and prevent him from obtaining others, to the ruin of his theretofore profitable business. The order of the trial court granting the temporary injunction prayed for was affirmed.

See, also, *Edmunds et al. v. Duff et al.*, 280 Pa. St. 355, 124 Atl. 489, 33 A. L. R. and note; *Stodder v. Rosen Talking Machine Co.*, 247 Mass. 60, 135 N. E. 251; *Tortorella v. H. Traiser & Co.*, 284 Mass. 497, 188 N. E. 254, 90 A. L. R. 1203 and note; also, notes in 19 A. L. R. 1441; 23 Id. 1407; 28 Id. 1173; and 33 Id. 719.

The sum of all the learning expounded in the foregoing cases, which could be indefinitely multiplied, is that any and every business, however lawful, must be conducted with due regard to the rights of others. (Restatement, Torts, §§ 825-831.) The trial court in the instant case had the right idea when, at the conclusion of the evidence and after ordering briefs to be submitted with suggested findings of fact, it said:

"Cut down your orchestra in the meantime, Mr. Adams, and don't make so much noise."

It is argued in support of the judgment that the plaintiff's hotel and defendants' dance hall are located in a "light industrial" district, and therefore plaintiffs should not expect the peace and quietude of an exclusively residential district. That may be conceded. However, this state and this court were pioneers in giving sanction and countenance to the zoning of cities to secure their harmonious future development. See "The Police Power and Esthetic Zoning," 3 Kan. Bar Journal (1937) 215-223. Neither the Kan-

sas legislature nor its judiciary has intimated that the adoption of a zoning ordinance and the zoning of a city into industrial, residential and other classified districts would justify the destruction of existing and established lines of business. (*Armourdale State Bank v. Kansas City*, 131 Kan. 419, 422, 292 Pac. 745.) The Hamilton Hotel long antedated the first zoning ordinance of Wichita; and it seems altogether inequitable that its legitimate business may be destroyed because a city zoning ordinance has authorized a dance hall in the neighborhood, and that it may be conducted with so much din of instrumental and mechanical music and strident singing through a megaphone at unseasonable hours that the guests of the hotel cannot sleep, to the consequent ruination of the business of the hotel.

This court holds that on the trial court's findings of fact the plaintiffs were entitled to substantial relief. The judgment will therefore be reversed and the cause remanded with instructions to grant to plaintiffs a reasonable measure of relief, which, if practicable, need not extend to the absolute suppression of the dance hall if some less drastic alleviation of the situation can be effected with due regard to the rights of plaintiffs. It is so ordered.