No. 32,598

BURFORD JEAKINS and IDA G. JEAKINS, *Appellees*, v. THE CITY OF EL DORADO, *Appellant*.

(53 P. 2d 798)

Opinion filed January 25, 1936.

*F. J. Leasure,* of El Dorado, for the appellant.

*L. J. Bond* and *R. C. Woodward,* both of El Dorado, for the appellees.

The opinion of the court was delivered by

THIELE, J.: The city of El Dorado appeals from an order over-ruling its demurrer to plaintiff's petition, the allegations of which are summarized as follows: Plaintiffs for many years have owned and resided on certain described real estate; defendant is a city of the second class owning and operating for more than ten years past a sewage-disposal plant on the bank of the Walnut river, and the outlet from the plant is into the river, which flows along the east city limits and then in a westerly direction past plaintiff's real estate, bounding the same on the north and east; that for many years the defendant operated the sewage plant in such manner the sewage was treated and no damage was caused plaintiffs.

"That beginning with the spring of 1933 a serious drought condition began in Butler county and said drought continued during the summer of 1933 and all of 1934, until about October thereof. That as a result of said drought the water in said Walnut river became low and its volume insufficient to carry away the sewage from said sewage-disposal plant. That the proportion of sewage discharged from said sewage-disposal plant increased over the volume of water in said river and said defendant carelessly and negligently and im-properly operated said sewage-disposal plant during said drought period and as a result much raw and untreated sewage was dumped and thrown into said river by said defendant, and the water in said river became very foul, unclean and contaminated and a very obnoxious and nauseating stench and odor came from said river. That some of the time during the summers of 1933 and 1934 said defendant did not operate said sewage-disposal plant at all, but dumped the sewage from said sewage-disposal plant into said river in its raw state, and without treating it."

It is further alleged that plaintiffs' home is only a few hundred

feet from the river, and that the odor and stench from the river at times became so foul plaintiffs were unable to endure it and were forced to leave their home for periods of time. That because of the sewage insects existed in great numbers and plaintiffs were kept in actual fear of disease from contamination. Because of the facts alleged the value of plaintiffs' property decreased in the sum of $5,000. It is further alleged that plaintiffs are aged, have become accustomed to said real estate as their home and are unable to establish another home at their time of life; that at all times mentioned defendant and its agents and employees have known the facts and conditions; that plaintiffs have protested and have requested the condition be remedied; that notwithstanding the protest of plaintiffs and others the city has willfully and knowingly operated said sewage plant in a careless and improper manner, and that because of the drought conditions defendant should have used greater care and diligence in the operation of the plant than under ordinary conditions; that during the summers of 1933 and 1934 said plant was in a bad state of repair and known to be so to the defendant, and if it had been kept in proper repair and operated in a careful and prudent manner the sewage would have been properly treated and the water in the stream would not have been contaminated and plaintiffs would not have been injured; that in addition to the damage to their real estate plaintiffs have been in constant fear of contamination and have been unable to live comfortably in their established home, have been compelled to breathe foul and obnoxious odors from the river and as a result their health has been impaired and their peace of mind destroyed and by reason thereof they have been damaged in an additional sum of $5,000. That on August 7, 1934, they filed a written statement of claim and demand with the city, a copy being attached. The prayer of the petition is for $10,000. An examination of the stated claim shows that it covers about the same matters as are alleged in the petition, making claim for the two specific items of damage, and notifying the city action would be commenced unless the claim was settled and the pollution of the river by the city discontinued.

Appellant contends that the maintenance and operation of its sewers are in exercise of its governmental rather than proprietary capacity, and therefore it is not liable to plaintiffs for any damages they may have suffered. We shall not pause to analyze the general question of a city's liability for damages growing out of some opera-

tion arising from the exercise of a governmental function, for, as said in *State v. Concordia*, 78 Kan. 250, 96 Pac. 487:

"The power granted to cities of the second class to build and maintain sewers does not warrant the commission of a public nuisance through their agency.

"In planning and in maintaining systems of sewerage cities of the second class must make due provision against public nuisances resulting from occurrences naturally and reasonably to be anticipated." (Syl. ¶¶ 1, 3.)

In White on Municipal Negligence, § 161, page 204, it is said:

"A city has no more right to injure the waters of a stream or the premises of an individual by the discharge of sewage into the stream than a natural person, and incurs the same liability by so doing, and as the rule is that where a municipal corporation deliberately pollutes the waters of a stream by causing its sewers to empty into the same, it is liable in damages to a landowner through whose premises the stream passes, and who is entitled to use it in its natural state, though the act was done in the exercise of a governmental function; and it will be no defense that the sewage was discharged at a point some distance from the watercourse, where it is discharged near a creek that flows into such watercourse. The rule is the same, of course, where, owing to negligence on the part of the municipality or its officers or agents, sewage escapes into such a stream and pollutes it."

In an annotation in 75 A. L. R. 1196, with respect to municipal immunity from liability for acts in performance of a governmental function, it is stated that a majority of the courts passing upon the question have held the immunity of a municipality from liability for acts done in performance of governmental functions does not extend to cases of injury resulting from a nuisance created or maintained by the municipality, and that the municipality is liable although the nuisance was created or maintained in the performance of public duties or governmental functions; and many cases in support are cited.

The allegations of the petition are that the city constructed a sewer system emptying into a stream and then so negligently operated it as to make it a nuisance to the damage of plaintiffs. Assuming those facts to be proved, it would be no defense to the city that the construction and maintenance of a sewer is a governmental function.

Appellant insists there is no allegation of nuisance in the petition. The word "nuisance" has been said to be incapable of precise definition. Literally, nuisance means annoyance, and any use of property which endangers life or health, gives offense to the senses,

violates the laws of decency or obstructs reasonable and comfortable use of property may be said to be a nuisance. (20 R. C. L. 380; 46 C. J. 645.) That operation of a sewer may constitute a nuisance was recognized in *State v. Concordia,* supra. (See, also, 46 C. J. 723, § 268, and cases cited.) Disagreeable odors were held to be a nuisance in *McMullen v. Jennings,* 141 Kan. 420, 41 P. 2d 753. And the cases holding that pollution of a well or a stream may constitute a nuisance are numerous. (See *McDaniel v. City of Cherryvale,* 91 Kan. 40, 136 Pac. 899, 50 L. R. A., n. s., 388; *Lackey v. Prairie Oil & Gas Co.,* 132 Kan. 754, 297 Pac. 679; *Berry v. Shell Petroleum Co.,* 140 Kan. 94, 33 P. 2d 953.) While the plaintiffs did not plead a conclusion and state that the facts alleged constituted a nuisance, they did allege the city had so operated the sewers, sewage-disposal plant and the waste therefrom that the waters in the stream bordering their property were polluted, and an obnoxious and nauseating stench arose therefrom, etc. We think the allegations of the petition were sufficient to state a nuisance existed.

It is likewise argued that the statement of claim filed by appellees with the city was insufficient. We are not disposed to put much stress on this contention so far as considering whether the statement as filed advised the city of plaintiffs' claim, for without repeating its language, although it may have been vague in some particulars, it clearly showed the plaintiffs claimed damages growing out of an alleged unlawful operation of the sewer and sewage-disposal plant.

We do, however, take note of the fact that it is readily discernible that, although not separately stated and numbered, an attempt is made to state two causes of action, one for $5,000 permanent damages to the real estate, and one for $5,000 temporary damages.

With reference to the claim for permanent damages, attention is directed to *McDaniel v. City of Cherryvale,* wherein a very similar state of facts existed. The question as to when the cause of action accrued was considered, and it was held that as the sewer system was in its nature, design and use a permanent structure, and its operation was necessarily a constant and continuous use, a cause of action for permanent damages arose when the sewage was first placed in the stream. *Lackey v. Prairie Oil & Gas Co.* dealt with a similar situation, and it was there said:

"The nature of a cause of action and the time when it accrues are determined by the facts, and not by when the injured person chooses to sue, or what he chooses to sue for. The principle is illustrated by the decision in

the case of *Buss v. Missouri Pac. Rld. Co.,* 120 Kan. 689, 244 Pac. 1059, cited by plaintiff. A watercourse was obstructed in 1916 or 1918. In 1923 crops were destroyed. In the opinion the court said a cause of action for damage to the land arose when the obstruction was built, and a cause of action for damage to crops occurred when the water destroyed crops." (p. 757.)

In *McMullen v. Jennings* the question of when a cause of action for damages from nuisance arose was again reviewed, the last two mentioned cases, and others of like effect, being followed. If the plaintiffs have sustained permanent damages to their real estate, it is because of the fact the sewage not only now but for some years past has been deposited in the Walnut river. It is apparent they are now seeking to recover permanent damages because during 1933 and 1934, owing to failure of sufficient rainfall to maintain the river at its former usual level, an inherent condition, existing since the sewage was first deposited in the river, has become worse. That cause of action is barred by the statute of limitations.

As to the cause of action for temporary damages, we note that claim was filed August 7, 1934. R. S. 12-105 provides that no action shall be maintained against a city on account of injury to property unless the person injured shall within three months thereafter and prior to bringing suit file the required written statement of claim. In *Beard v. Kansas City,* 96 Kan. 102, 150 Pac. 540, a statute which, so far as we are now concerned, is almost identical with R. S. 12-105, was under consideration, and it was there held the claimant was limited to the injury sustained during the four (now three) months' period preceding the filing of the required written statement. It thus appears that while plaintiffs claim temporary damages sustained during 1933 and 1934, they must on trial be limited to those, if any, sustained within the period of three months immediately preceding the filing of their written statement of claim filed August 7, 1934, and not otherwise.

Bearing in mind the old precept that a general demurrer should be overruled if any cause of action is stated, we hold the trial court ruled correctly in overruling defendant's demurrer to plaintiffs' petition.