No. 36,430

JACOB E. KLASSEN, *Appellee*, v. THE CENTRAL KANSAS COÖPERATIVE CREAMERY ASSOCIATION, of Hillsboro, *Appellant*.

(165 P. 2d 601)

 Opinion
filed January 26, 1946. 

*John P. Flinn,* of Newton, argued the cause, and *Ezra Branine, Alden E. Branine, Fred Ice,* all of Newton, and *John E. Wheeler,* of Marion, were on the briefs for the appellant.

*Earl C. Moore,* of Wichita, argued the cause, and *Lester Wilkinson,* of Wichita, was on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages, both actual and punitive, alleged to have been sustained when a stream and the underground water supply of a farm of which plaintiff was tenant were polluted by the discharge of waste products from a creamery operated by defendant. Judgment was for plaintiff. Defendant appeals.

The amended petition (referred to hereinafter as the petition) purported to state three causes of action. After the formal allegations the first cause of action alleged that the plaintiff was a tenant living on and farming a described half section of land just south and east of the city of Hillsboro; that this city operated a sewage disposal plant just north of plaintiff's farm; that this city disposal plant drained into a small creek which flowed through a part of plaintiff's farm about three hundred feet from the house. The petition then alleged that plaintiff had rented this farm on a year-to-year basis, but that on March 1, 1942, he was in doubt about whether to rent the place again on account of stream pollution that had occurred in 1941, but that the city of Hillsboro enlarged its sewage plant and started its operation about February 2, 1942, and the state board of health advised plaintiff that final inspection indicated it would operate so that no nuisance would be created, whereupon plaintiff entered into a five-year lease for the land in question for a period from March 1, 1942, to March 1, 1947. The petition then alleged that defendant operated a creamery plant in

the city of Hillsboro and emptied its waste products into the sewer system of the city; that in the spring of 1941 the defendant without treating its waste products dumped about 15,000 gallons of creamery waste a day into the sewer system, which overloaded the sewage plant, causing increased biochemical oxygen demand content of the effluent of the plant far beyond the average domestic sewage; that the average domestic sewage runs around twenty parts per million while this effluent was about one hundred parts per million. The petition then alleged that beginning about June 1, 1941, the pollution from the sewage plant reached plaintiff's farm, which was about a mile from the plant, at which time the water in the creek became murky and developed a pigpen odor and a black sludge appeared on the water and the banks of the stream; that during the summer of 1941 the defendant continued to dump its waste into the sewer polluting the stream which ran through plaintiff's farm even though it had advised the state board of health it would cease overloading the plant; that as a matter of fact defendant enlarged its plant so that its washings rose to an average of 34,000 gallons a day while its milk receipts increased from an average of 3,000 pounds in May, 1941, to 18,000 pounds in June, 1942, while its cheese production rose from an average of 2,000 pounds in May, 1941, to 15,000 pounds in June, 1942. The petition next alleged that as a result of this pollution of the stream the underground water supply on the farm became polluted, the exact date of which plaintiff did not know; that the underground water supply became so polluted in the summer of 1942 that plaintiff's hogs and chickens began to die from drinking well water. The petition then alleged various amounts of damage to hogs and chickens, amounting to $481.25, all of which was the result of the pollution of plaintiff's water supply; that defendant had overloaded the sewage plant and caused scum and sludge which in 1941 caused the itemized loss of chickens in the amount of $422.50, loss of egg production of $360, required the purchase of poultry medicine in the amount of $25, retarded the growth of lambs, causing a loss of $135, caused a reduction in the increase of older sheep resulting in the loss of $36, required extra feeding in the amount of $92, caused a decrease in milk production in the amount of $128, all of which amounted in the aggregate to $1,198.50. The petition then alleged that to stop his hogs and chickens from dying plaintiff was compelled to haul water for thirty-six weeks, at a cost of five dollars per week, or a

total of $180. In this cause of action plaintiff prayed for damages in the amount of $1,759.75.

In the second cause of action plaintiff made the allegations of the first cause of action a part thereof and then alleged that the excessive pollution caused the development of an obnoxious odor, stench and pig smell; that plaintiff and his family were subjected to this foul odor from about June 1, 1941, to the date of the filing of the petition; that it was worse in summer than in winter. Plaintiff prayed for $2,000 damages in this cause of action.

In the third cause of action plaintiff after reference to the allegations of the first and second causes of action alleged that the defendant through its agent, with full knowledge that the wastes from its plant were causing the pollution of the stream on plaintiff's land, negligently refused to take any action to stop the pollution, but continued to empty creamery wastes into the sewer in violation of a city ordinance and contrary to the instruction and advice of the state board of health. In this cause of action plaintiff asked for punitive damages in the amount of $5,000.

To this petition defendant filed a general denial. The answer then alleged that in 1930 the defendant constructed and began operating the creamery plant in question; that by agreement with the city it had continuously discharged certain waste products from this plant into the sewer system of the city, but that it never emptied any of these waste products into the sewer system without treating them, and the answer denied that defendant had ever emptied excess amounts into the sewer system or that plaintiff had ever suffered any loss on account of negligent conduct of defendant, and that if plaintiff had suffered any loss the action was barred by the statute of limitations. The answer then alleged that the causes of action stated in plaintiff's petition were the identical causes of action alleged in another action in which plaintiff in this case was plaintiff and the city of Hillsboro was defendant and in which plaintiff recovered damages in the amount of $750, which judgment had been satisfied and paid. The answer then alleged that on account of the foregoing judgment the causes of action alleged in plaintiff's petition were barred by the doctrine of *res judicata*. The answer then alleged that at the time plaintiff entered into the lease for the farm in question plaintiff knew that defendant was discharging certain of its washings into the sewer system in question, and that the remaining refuse was being discharged into the creek in question and that if

plaintiff suffered any loss thereby he voluntarily assumed such risk.

For a reply plaintiff first denied all new matter, then alleged that the action against the city, reference to which was made in the answer, was for pollution of the stream for a period of about June, July and August, 1941, and not for any itemized damage; that about February 1, 1942, the reconstructed sewage plant was completed by the city and inspected by the state board of health who informed plaintiff it would be adequate to care for sewage then entering the plant, including the sewage of the defendant, and plaintiff did not learn until after he had signed the lease that defendant was again overloading the sewage plant.

When the case came on to be tried, before any evidence was introduced, defendant filed a motion for judgment on the pleadings upon the grounds that plaintiff's causes of action were barred by the statute of limitations and that the causes of action were *res judicata*. The petition in the case of *Klassen v. City of Hillsboro* was made a part of this motion. As far as necessary for our purposes this last-mentioned petition stated about the same facts as those pleaded in the petition in the present action except that the cause of action against the city was made to depend on the negligence of the city in operating an inadequate sewage plant and the time of the damage was alleged to,be from June 12 to September 12, 1941, and there was no reference to pollution of the underground water supply. The damages alleged to have been sustained were itemized as loss of chickens $422.50, loss of egg production $360, purchase of poultry medicine $25, growth of lambs retarded $135, reduction in the increase of older sheep $36, extra feeding $22, decrease in milk production $128, or a total of $1,128.50. The second cause of action spoke of the foul odors from June 1, 1941, to September 12, 1941, and asked for $1,000 damages; the third cause of action alleged that the city continued to permit the company to overload the sewage plant knowing all the time that it was polluting the stream, to plaintiff's damage. Plaintiff asked $1,000 punitive damages in this cause of action.

This motion for judgment on the pleadings was sustained by the trial court on the ground that the plaintiff's causes of action were each of them *res judicata* on account of the judgment in the former action, to which reference has been made. Plaintiff was given twenty days to file a second amended petition.

Plaintiff filed an amended petition (second amended petition)

which alleged in the first cause of action that the underground water supply of plaintiff became polluted and that the first damage to plaintiff from this pollution occurred in the summer of 1942. This damage was itemized as loss of hogs $192, loss of hens $93.75, loss of pullets $57.50, loss in egg production $108, veterinary services $30, hauling water thirty-six weeks at five dollars a week $180, hauling water in 1943, thirty weeks, a total of $150. The total plaintiff claimed for damages to livestock was $811.25. In the original petition he had asked for $1,759.75 for such damage. In the second cause of action in the amended petition plaintiff alleged that he and his family were subjected to obnoxious odors during the summer months of 1942 and 1943. In the original petition and in the petition against the city he had claimed damages for injuries occurring during 1941. The allegations in the third cause of action of the amended petition were substantially the same as in the original. To this amended petition defendant filed a general demurrer on the ground that it did not state a cause of action against the defendant and that each cause of action was *res judicata.*

In its memorandum opinion overruling this demurrer the trial court pointed out that after the trouble of 1941 the sewer system was enlarged by the city and approved by the state board of health as being of sufficient capacity to treat and take care of the sewage from the city, but that after its enlargement the defendant enlarged the capacity of the plant and deposited so much more waste matter that the stream and water supply of plaintiff became polluted. The trial court pointed out that the defendant urged as grounds for its demurrer that plaintiff had actual knowledge of conditions at the time he leased the premises and assumed the risk; that defendant had no control over the sewage after it left its plant; that the causes of action stated were res judicata; and that since no specific damages were stated in the second cause of action it must fail. The trial court then held that in view of the allegations that the city had enlarged its plant, and the state board of health had approved it before the plaintiff signed his lease, and that the damage claimed was alleged to have been caused by the enlargement of the creamery plant, plaintiff could not be held to have assumed the risk, and that since the petition alleged that the cause of the damage was from refuse which defendant created upon its own premises the fact that the waste matter reached the plaintiff's premises through the city's sewer was no de-

fense. The trial court then pointed out that the amended petition asked for damages for injury to different property and on different dates than were claimed in the action against the city, and that the causes of action stated therein were not res judicata. The trial court further held since in the second cause of action plaintiff sought damages on account of offensive smells, to which he and his family were subjected, plaintiff might recover even though no pecuniary loss was alleged or proven.

The demurrer of defendant to the petition was overruled.

The answer of defendant to the amended petition pleaded substantially the same defenses that were pleaded in its answer to the first petition. The reply of plaintiff was substantially the same.

When the action came on for trial defendant filed a motion for judgment on the pleadings, argued that there was no material change between this petition and the first petition. This motion was overruled.

At the close of the evidence defendant requested the following instruction:

"You are instructed that, if the Plaintiff suffered injury, and that said Plaintiff submitted voluntarily to known dangers from the pollution of the stream on Wall Creek, described in Plaintiff's Second Amended Petition, with the realization of the risks, assented and voluntarily placed himself or his property, knowing of the peril or danger complained of, the said Plaintiff can not recover damages, and it will be your duty to find for the Defendant."

This instruction was refused. Only two forms of verdict were submitted to the jury, one for the foreman to sign if the jury found for the defendant and one for him to sign if it found for the plaintiff. The jury returned a verdict in favor of plaintiff in the amount of $830. Defendant's motion for a new trial was overruled and judgment entered for plaintiff in the amount of the verdict. Hence this appeal.

Defendant first argues that the trial court erred in granting plaintiff leave to file an amended petition and that its demurrer to the amended petition should have been sustained. The basis of this argument is that the causes of action stated in the amended petition were adjudicated in the former action wherein the plaintiff in this action obtained judgment against the city. In connection with this argument defendant cites and relies on authorities where we have held that an entire claim arising from a single wrong cannot be divided and made the subject of several suits no matter how numerous the items of damage. We find no fault with those au-

thorities. The difficulty is in applying them to the facts in this case. The action against the city was for damages sustained in 1941. This action is for damages sustained in 1942 and 1943. The action is for damage to specific personal property, not permanent damage to real estate. To hold as argued by defendant would mean that a defendant could maintain a nuisance to the damage of his neighbor and should he be compelled to pay damages on one occasion he could then with impunity maintain the same nuisance to the end of time. Such is not the law. In *McDaniel v. City of Cherryvale*, 91 Kan. 40, 136 Pac. 899, a landowner had sued for permanent damages to his real estate on account of stream pollution. On the question with which we are now concerned it was said:

"He could have elected to have sued for temporary damages sustained within the statutory period preceding the bringing of the action, and for any subsequent injury or loss an additional action might have been brought. He chose, however, to treat the injury as permanent in character and brought a single action to recover for all present and prospective damages to his land." (p. 43.)

See, also, *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798. Laying aside the fact that one action was brought by plaintiff against the city, while the other one was brought by the same plaintiff against the creamery company, thus preventing the two actions from involving identical parties, they were not identical causes of action. The underlying theory of the doctrine of res judicata is that no man is entitled to have the same questions tried more than once. In this case the issues of fact and law were altogether different.

Defendant next argues that its demurrer to the amended petition should have been sustained because under the allegations of the petition plaintiff knew the condition of the stream flowing through his farm at the time he entered into his lease and he knowingly assumed the risk of incurring such damage. Plaintiff stated that at the time he signed the lease in 1942 he had been informed by the city and the state board of health that the city had enlarged its sewer system so as to take care of the waste products from the creamery. This cause of action really depends on the allegations that after this enlargement of the sewer system the company increased its capacity so that as far as pollution was concerned the parties at the beginning of the summer of 1942 were right back where they were in 1941. Plaintiff did not assume the risk from a situation

about which he had no warning. Furthermore, the rule is as stated in 46 C. J. 738, as follows:

"The early common law, which regarded a nuisance only as an injury to some interest in land, gave this remedy only to persons having interests in lands; and in the common-law action, by writ of nuisance, the declaration had to show that plaintiff had a freehold estate in the premises affected by the nuisance. The tendency of the American courts is to break away from the early common-law rule, and it is now generally held that a lawful possession, although unaccompanied by any title, is sufficient to support an action for damages for interference with the lawful enjoyment of the premises by the person in possession, but not for an injury to the fee, or for injuries which occurred prior to the time he acquired possession or was entitled to possession.

"A lessee is entitled to recover damages sustained by him during his tenancy from the maintenance of a nuisance which affects his enjoyment and use of the premises, although he leased the property or renewed his lease thereof after the creation of the nuisance, and with knowledge of its existence, for a tenant who 'comes to a nuisance' should be accorded the same degree of protection as one who purchases property near an existing nuisance. But as a corollary to the rule that the landlord is the proper person to sue for a diminution in rental value where, by reason of the nuisance, he has been compelled to make a reduction in the rent, the tenant in such a case cannot recover for such diminution in the value of the property to him, unless there is an express agreement between him and the landlord giving him the right to sue therefor, or unless the nuisance is increased during his tenancy."

See, also, *Bly v. Edison Electric Illum. Co.*, 172 N. Y. 1, 64 N. E. 745, 58 L. R. A. 500; *Hoffman v. Edison Electric Illuminating Co.*, 84 N. Y. S. 437, 87 App. Div. 371; *Darr v. Cohen*, 158 N. Y. S. 324, 94 Misc. Rep. 471; and *Ruben v. Brighton Place Dairy Co.*, 13 N. Y. S. 2d 833, 257 App. Div. 1034.

Defendant next argues that its demurrer to the plaintiff's petition should have been sustained because under its allegations it emptied its waste products into the sewer system of the city and since it had no control over its waste products after they entered this sewer system it cannot be held liable if this sewer system was operated negligently and was not adequate to properly take care of this waste.

This court considered an argument similar to this in *Berry v. Shell Petroleum Co.*, 140 Kan. 94, 33 P. 2d 953. There an oil company had emptied its salt water into the sewer of a city. While flowing through part of this sewer system some of this salt water seeped into the soil and finally damaged the plaintiff's water supply. In an action for damages we pointed out a statute that forbade oil companies permitting their salt water to escape from their

premises, but held that the company would have been liable even had there been no statute, under the doctrine of *Fletcher v. Rylands, L. R. 1 Exch. 265, (1866)*. There are allegations that the creamery plant brought into being waste products that were dangerous and likely to cause damage if permitted to escape. Under such circumstances it was the duty of the company to take care that these products did not escape or that they were so treated that when they left its property they had lost their capacity to do damage. The fact that before reaching the farm of plaintiff these harmful waste products flowed through the sewer system of the city does not excuse the defendant, which created them, and permitted them to escape. See, also, *State Highway Comm. v. Empire Oil and Ref. Co.*, 141 Kan. 161, 40 P. 2d 355.

Defendant next argues that the trial court erred in overruling its demurrer to plaintiff's evidence. It first argues that there was no evidence to prove that the underground water supply was polluted. We must examine the record in connection with this argument. In doing so we shall not weigh evidence and we will indulge all presumptions and draw all inferences favorable to the plaintiff. If there was substantial evidence to establish this allegation of the petition then the trial court was correct in overruling the defendant's demurrer to plaintiff's evidence. On this particular point the plaintiff testified that in 1942 he used water from a well about two hundred feet from the stream to water his livestock; that in June, 1942, he began to lose hogs; that he used water from a well about two hundred and fifty feet from the stream for his chickens and in 1942 the chickens began to die; that when he began to haul water for his hogs and chickens from his neighbor's well he did not lose any more hogs or chickens. Hogs and chickens do not die from drinking water unless there is something the matter with it. It is not necessary that there be a chemical analysis as to whether the water was polluted to make a case to go to the jury. There was ample evidence that the water in the stream was polluted. There was also evidence that the well water had the same general appearance as the water in the stream. On a demurrer to the evidence this was sufficient to warrant the trial court in overruling it.

Under this head defendant next argues that even if the water was polluted there was no evidence that such condition was the result of any negligent or improper conduct on the part of defendant. Liability of the defendant does not depend on negligence in this

action. *Berry v. Shell Petroleum Co.*, supra. It is sufficient if defendant brought products into being that were able to damage people and that it permitted them to escape from its premises to injure plaintiff. Here there was testimony of representatives of the state board of health that the substance found in the water on plaintiff's farm was creamery waste. As we have already pointed out there was substantial evidence on the other points raised.

Defendant next argues that its demurrer to the evidence should have been sustained because there was no evidence that plaintiff's hogs and chickens died from drinking well water or that any of the alleged items of damage, as set forth in the first cause of action, were the result of pollution of the underground water supply. What better proof could there be than the fact that the stock had not died before the pollution came even though they drank water from these wells, that they died after the pollution came, and that after the rest of the stock began to use water from a different source the losses stopped?

Defendant next argues that there was no allegation or proof that the plaintiff suffered any loss or damage on account of the odor emanating from the stream—hence its demurrer to the petition as to the second cause of action should have been sustained on that ground and further that its demurrer to the evidence as to this cause of action should have been sustained. It will be remembered that this was the cause of action in which plaintiff asked $2,000 damages because the pollution created an obnoxious odor, stench and pigpen smell in plaintiff's pasture and the plaintiff and his family were subjected to this foul odor during the warm months of 1942 and 1943 and plaintiff and his family had to close up the house on sultry nights to keep out the offensive smell. Defendant argues that there is no allegation of damages here for which plaintiff could be compensated and further that there can be no award of damages except in compensation for loss or injury sustained.

It is noted there were no motions directed at this cause of action to make it more definite and certain. Hence it must be liberally construed.

This cause of action stated the maintenance of a nuisance. See *McMullen v. Jennings*, 141 Kan. 420, 41 P. 2d 753, where we said:

"In the operation of such an elevator it is a nuisance to unreasonably pollute the air with dust having a foul odor or with other offensive substances, to the annoyance, damage or harm of the owners or occupiers of adjacent lands

in the use and enjoyment of the properties, and in determining whether it is unreasonable, the annoyance is measured by what would unreasonably disturb the ordinary and usual comforts of persons of normal tastes and sensibilities.

"Permitting large quantities of dust having noisome qualities to escape and settle upon adjacent properties may constitute a nuisancce." (Syl. ¶¶ 2, 3.)

See, also, *Jeakins v. City of El Dorado*, 143 Kan. 206, 53 P. 2d 798. It is not necessary to enable one to recover damages for the maintenance of a nuisance such as this that he be compelled to call a doctor or expend money for medicine. Members of the public have a right to be free from such an annoyance and whoever invades this right may be compelled to respond in damages.

Defendant next argues that the trial court erred in failing to instruct the jury that it could not return a verdict for exemplary damages unless it found plaintiff entitled to actual damages.

We have examined the instruction given by the court on this point. It might very well have been more specific. The record does not disclose that defendant objected to this instruction when it was given, nor did it offer or request an instruction on the subject. Furthermore, the plaintiff proved that he had sustained actual damage.

Defendant next argues that the trial court erred in not submitting to the jury separate forms of verdict with respect to each of the causes of action.

The record does not disclose that counsel for defendant requested that additional forms of verdict be submitted nor did they request that the form of verdict or instructions be submitted to them. G. S. 1935, 60-2909, subsection 5, provides, in part, as follows:

"Before reading the instructions to the jury, the court shall, when requested, submit the same to counsel on either side and give counsel a reasonable time to suggest modifications thereof."

That statute contemplates that if either party to an action being tried thinks that the instructions are not full and complete, he should request modification of them, and that if he does not request such a modification, he cannot complain of them.

Furthermore, the defendant did not request that any special questions be submitted to the jury, as it had a right to do. The plaintiff prayed judgment for compensatory damages in the amount of $811.25. If the jury believed his witnesses there was ample evidence to sustain a verdict for this amount. The verdict was for $830, not quite $20 more than plaintiff proved his actual damages to be. Under

the circumstances, it was not reversible error for the court to fail to submit a different form of verdict for each cause of action.

The points raised in the argument of defendant that the trial court erred in overruling its motion for a new trial have already received consideration in this opinion.

The judgment of the trial court is affirmed.