# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-4104
No. 04-4150

_____

The Baker Group, L.C.; Carle Baker,   *
Jr., Trustee of the MTY Profit   *
Sharing Plan and Trust,   *
  *
Plaintiffs - Appellants,   *
  *
v.   *
  *
Burlington Northern and Santa Fe   *
Railway Company,   *
  *
Defendant - Appellee.   *

_____         Appeals from the United States
District Court for the
No. 04-4124         Western District of Missouri.

_____

Linus L. Baker; Laurence M. Jarvis,   *
  *
Appellants,   *
  *
v.   *
  *
Burlington Northern and Santa Fe   *
Railway Company,   *
  *
Appellee.   *

_____

Submitted: January 9, 2006
Filed:   June 16, 2006
_____

Before LOKEN, Chief Judge, HANSEN and MELLOY, Circuit Judges.
_____

LOKEN, Chief Judge.

The Baker Group, L.C., and MTY Profit Sharing Plan and Trust (collectively "the Baker Group") commenced this action against Burlington Northern and Santa Fe Railway Company ("BNSF") in Missouri state court, asserting contract and tort claims arising out of a Railroad Car Net Lease Agreement ("the Lease") under which BNSF leased 649 railcars for a ten-year period. BNSF removed the action, invoking the district court's diversity jurisdiction. In a prior appeal, we reversed the district court's dismissal of certain claims on res judicata grounds and remanded for further proceedings. Baker Group v. Burlington N. & S.F. Ry., 228 F.3d 883 (8th Cir. 2000) ("Baker I"). On remand, District Judge Scott O. Wright recused, and the case was reassigned to District Judge Fernando J. Gaitan. In a series of pretrial rulings, Judge Gaitan sharply limited the issues to be tried. After a one day jury trial, the court granted BNSF judgment as a matter of law on the remaining claims. The Baker Group appeals these rulings. In a separate appeal, Baker Group attorneys Linus Baker and Laurence Jarvis ask us to expunge comments critical of them in Judge Wright's order that we reviewed in Baker I. We affirm the judgment of the district court and dismiss the attorneys' appeal.

**Background**

The Lease was signed in July 1987 by BNSF as Lessee and by Caldwell-Baker Company ("CBC") as Lessor acting as broker for a disclosed principal, First Security

-2-

Bank of Utah. First Security assigned its interests under the Lease, including the exclusive right to receive rental payments, to the Baker Group in 1993. The Lease expired in 1997. Two Lease provisions are primarily at issue in this lawsuit and in related litigation in a Kansas state court. Article 8 set forth BNSF's duty to "maintain the cars in good condition and repair," required Lessor approval of physical alterations to the cars, provided that BNSF was responsible for lost or destroyed cars, and prescribed a procedure for resolving issues arising when a car was lost or destroyed. Article 14 set forth BNSF's duties to return the cars in good condition at the end of the Lease and to pay the daily rent fee until a car was returned.

The Baker Group and CBC sued BNSF in Kansas state court before the Lease expired, alleging violations of Article 8. With that litigation on-going, the Lease expired and the Baker Group filed this action asserting violations of Article 8 during the Lease plus additional violations of Article 14 at the end of the Lease, namely, the return of railcars in poor condition and the failure to return other cars. After the Kansas trial court dismissed all claims, the district court dismissed all claims in this action as barred by the doctrine of claim preclusion (res judicata). In Baker I, we reversed the dismissal of the Article 14 claims because they arose at the end of the Lease, after the Kansas lawsuit commenced, and because the Kansas court refused to permit Article 14 claims to be litigated. 228 F.3d at 886-87.

The claim preclusion landscape was altered when the Kansas Court of Appeals reversed the trial court decision on which Baker I relied. Caldwell-Baker Co. v. Burlington N. & S.F. Ry., No. 82,715 (Kan. App. July 21, 2000).[1] On remand in that case, the Kansas trial court refused to permit an expansion of the issues to be tried to

---

[1]The Kansas Court of Appeals filed its opinion on July 21, 2000, more than two months before our decision in Baker I, yet the Baker Group and its attorneys failed to notify us of a decision that would have significantly impacted their prior appeal. The failure is inexplicable and reflects a lack of candor that has plagued this litigation from the outset.

include the primary issue in this Missouri action -- Article 14 claims involving the condition of cars returned by BNSF at the end of the Lease. Instead, the court's pretrial Journal Entry recited that the causes of actions remaining for trial in Kansas were "plaintiffs' claim that defendant violated Article 8C and Article 14 of the Lease in question by destroying wrecked cars and not returning them to plaintiffs," plus a contract claim for attorneys' fees. The Kansas case was tried, and the jury awarded plaintiffs $168,000 because BNSF failed to give timely notice that certain rail cars had been damaged and would be destroyed.

### The Article 14 Claims That Were Tried

In a laudable effort to narrow the issues for trial, the district court on remand ordered the parties to respond to a series of questions and then used those responses as a basis for determining that the only issue to be tried was the Baker Group's Article 14 claim that BNSF failed to return certain railcars at the end of the Lease. The parties agreed that either 648 or 649 cars were initially leased, that 23 cars were lost or destroyed during the term of the Lease and paid for by BNSF pursuant to Article 8, and that 615 cars were returned by BNSF or were being repaired by the Baker Group at the end of the Lease. That left eleven cars to be accounted for at trial. The task of tracing a particular railcar was complicated by the fact that BNSF had renumbered some cars during the term of the Lease. Just before trial, the court issued an order that identified eleven cars at issue, limited the trial to those eleven cars, and provided that the Baker Group "will be required to establish that the above referenced cars were not returned at the end of the lease in accordance with Article 14."

Carle Baker was the only witness for the Baker Group at trial. While insisting that eleven cars were never returned, Baker admitted that the Baker Group had been notified by BNSF during the term of the Lease that at least six of the eleven had been damaged and would be destroyed pursuant to Article 8. However, Baker explained, the Baker Group was never paid for those six cars and the other five "have not been

-4-

accounted for." Roger Sperry, retired Director of Equipment, testified for BNSF that he was responsible for finding all leased railcars at the end of the Lease and that "every active car was returned." Sperry explained that, just before the Lease expired, BNSF was paying rent on 626 cars, eleven more than the 615 that were returned, because "[i]n some cases Mr. Baker refused to acknowledge that the cars had been destroyed so it was determined that it would be at that time appropriate to continue to pay rent until resolution could be made between Mr. Baker and BN[SF]."

Reviewing the issue *de novo*, we conclude that the district court correctly granted BNSF judgment as a matter of law at the close of the evidence. See Arabian Agric. Servs. Co. v. Chief Indus., Inc., 309 F.3d 479, 482 (8th Cir. 2002) (standard of review). Recall that the Kansas court defined the issue to be tried in that case as "plaintiffs' claim that defendant violated Article 8C *and Article 14* of the Lease in question by destroying wrecked cars and not returning them to plaintiffs." The doctrine of claim preclusion barred the Baker Group "from relitigating claims that were litigated *or could have been litigated*" in that prior suit. Baker I, 228 F.3d at 885. All claims for cars that were not returned because they were lost or destroyed during the term of the Lease could have been litigated in the Kansas action. This included claims for a larger settlement payment under Article 8 because BNSF did not provide timely notice. It also included claims for rental payments not made prior to the settlement payments, which could be viewed as either Article 8 or Article 14 claims. On the other hand, the Kansas court did not include in the issue to be tried Article 14 claims for cars that were not wrecked, were still in existence, and were not returned at the end of the Lease. Any cars in that category were never involved in the Article 8 process that was the core of the Kansas lawsuit. Thus, to prevail at this trial, the Baker Group had to prove that one or more railcars fell into this narrow category. It failed to do so. Indeed, on direct examination, Carle Baker testified:

> Q   (By Mr. [Linus] Baker)  Mr. Baker, for every car that was destroyed, did you find a payment record?

A      No.

Q      How many payments records are you missing, for the cars under
the lease?

A      Eleven.

This testimony, plus the Baker Group's failure to discredit Sperry's testimony that all railcars in existence at the end of the Lease were returned, establish that all claims for non-returned cars are precluded because they could have been litigated in the Kansas case.  "[A]n entire claim arising from a single wrong cannot be divided and made subject of several suits no matter how numerous the items of damage."  Klassen v. Central Kan. Co-op Creamery Ass'n, 165 P.2d 601, 606 (Kan. 1946).

It may be that the Baker Group has lost an opportunity to litigate whether there are up to five leased railcars that were never returned to the Baker Group and are still functioning somewhere in the BNSF system or elsewhere.  But this is the result of filing multiple lawsuits with overlapping claims in different courts. Those who abuse the judicial system in this fashion must suffer the consequences.  The judgment dismissing all claims for non-returned cars is affirmed.

## The Claims That Were Not Tried

The district court made a series of pretrial rulings that simplified the issues to be tried in this action.  These rulings are ripe for review because the court has now entered final judgment.

**A. Tort Claims.** The Baker Group's amended complaint included tort claims for conversion of non-returned cars,[2] for negligent breach of a bailee's duties, and for breach of the duty of good faith and fair dealing. Judge Wright initially dismissed these claims on the ground that the Lease defined the parties' relationship and "no independent duty exists beyond the contract." We declined to review that interlocutory ruling in Baker I, 228 F.3d at 888. On remand, Judge Gaitan reaffirmed the prior ruling. The Baker Group appeals the dismissal of these claims, an issue we review *de novo*. See Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995).

Under Kansas law, a plaintiff may pursue breach of contract and "independent" tort claims, even if based on the same facts. See Burcham v. Unison Bancorp, Inc., 77 P.3d 130, 145-46 (Kan. 2003). In this case, however, the Baker Group does not allege an independent tort, such as the breach of fiduciary duty at issue in Unrau v. Kidron Bethel Retirement Servs., 27 P.3d 1, 15 (Kan. 2001). Rather, the amended complaint alleged only the breach of duties imposed on BNSF by the Lease. In the Kansas action based on the same Lease, the Kansas Court of Appeals affirmed the dismissal of all tort claims because "all the tort claims arose from the alleged breach of contract." CBC v. BNSF, slip op. at 19.

Turning to the additional claims in this case, the Baker Group's claim for breach of the duty of good faith and fair dealing is a contract claim, not a tort claim. See Kansas Baptist Convention v. Mesa Operating Ltd. P'ship, 864 P.2d 204, 211 (Kan. 1993). As the duty is an implied term of the Lease, it cannot add to BNSF's express duties under Article 8 and Article 14 of the Lease. See Taylor Equip., Inc. v. John Deere Co., 98 F.3d 1028, 1031-32 (8th Cir. 1996), cert. denied, 520 U.S. 1197 (1997). Likewise, the tort claims for conversion and negligent breach of a bailee's duties are based upon the parties' contractual relationship. Though a choice of

---

[2]We are inclined to agree with BNSF that the amended complaint did not plead a claim for conversion, but the district court treated the claim as adequately pleaded.

remedies may be available to a bailor in this situation, the Kansas courts construe complaints that emphasize the defendant's contractual duties, liked the amended complaint in this case, as an election to waive the tort and sue for breach of contract. See Cont'l Ins. Co. v. Windle, 520 P.2d 1235, 1238 (Kan. 1974). Thus, the district court did not err in following the lead of the Kansas courts in related litigation involving the same Lease and dismissing the Baker Group's purported tort claims.

**B. Contract Claims for Returned Cars.** Article 14 of the Lease, entitled "Delivery at End of Term," imposed the following obligations on BNSF at expiration:

> Lessee shall deliver the cars to Lessor or Lessor's designee at the end of the lease term . . . empty, free from residue, and in the same order and condition as it was delivered by Lessor to Lessee, except for and subject to ordinary wear and tear and modifications permitted under this Agreement. . . . Lessee shall continue to pay the daily rental charge on each car . . . until it is returned to Lessor [in the condition required]. . . .

> Lessee, at its expense, shall remove or cause to be removed from the cars any of Lessee's special paint and advertising and all Lessee marks. Lessee shall on demand, reimburse Lessor for the expense of cleaning any car that contains residue or other such cost which may be incurred to place a car in the condition described above, provided Lessor advises Lessee of such cost or expense within fifteen (15) days from the time it receives the car . . . from Lessee, and provided Lessor has permitted Lessee to participate in a joint inspection of such car(s) to verify its reported condition.

The amended complaint alleged that BNSF violated Article 14 by returning cars in substandard condition and by not removing BNSF's special paint, advertising, and reporting marks. The complaint prayed for damages including "the fair and reasonable cost of repairs" plus compensation for the loss of rental income while the returned cars were restored to their original condition. The district court dismissed these claims prior to trial on the ground that the Baker Group failed to satisfy

conditions precedent to recovery under Article 14 -- advising BNSF of any repair expenses within fifteen days of receiving the cars and permitting BNSF to participate in a joint inspection to verify the alleged deficient conditions.

On appeal, the Baker Group argues that the district court erred in construing Article 14 because the conditions precedent are found in the second paragraph of Article 14 and therefore only apply to claims for reimbursement of the costs of removing BNSF logos and reporting marks from the returned cars. The Baker Group's brief asserts that they did not "seek reimbursement of their out-of-pocket costs in this lawsuit," an assertion flatly contradicted by the above-quoted prayer for relief in the amended complaint. This is an example of why the Baker Group's ever-changing litany of multiple claims asserted in multiple courts left it with little if any credibility in the district court, or in this court.

After careful review of the Lease as a whole, the district court concluded that the conditions precedent in the second paragraph of Article 14 unambiguously apply to all damage claims for breach of BNSF's duties under Article 14 concerning returned cars. Reviewing the district court's interpretation of the unambiguous contract *de novo*, we agree. See Winthrop Res. Corp. v. Eaton Hydraulics, Inc., 361 F.3d 465, 470 (8th Cir. 2004) (standard of review). As the court noted, limiting the conditions precedent to the duties set forth in the second paragraph would permit the Baker Group to demand post-Lease rental payments on rail cars allegedly needing repairs without providing BNSF with timely notice and a joint inspection to verify that the cars were returned in substandard condition. In addition, the reference to "residue" in the second paragraph links directly to the duty prescribed in the first paragraph to return cars "free from residue," further textual evidence that the conditions precedent apply to all Article 14 duties.

Alternatively, the Baker Group argues that BNSF may not enforce the Article 14 conditions precedent because the Kansas state court ruled that BNSF breached

Article 8 of the Lease by failing to give timely notice that certain railcars were lost or destroyed during the term of the Lease. That ruling, the Baker Group explains, discharged them from all future performance duties, including compliance with the post-termination conditions precedent in Article 14. The district court rejected this argument, concluding "there is no basis for applying collateral estoppel to prevent [BNSF] from raising the issue of condition precedent as it relates to Article 14." We agree. See Restatement (Second) of Contracts §§ 237, 245 (performance of a condition is excused only when the other party's breach *contributes materially* to the non-occurrence of the condition). The Baker Group offered no evidence that BNSF's failure to give timely notice under Article 8 that some railcars were lost or destroyed during the Lease materially affected the Baker Group's Article 14 duties to give notice and offer joint inspection of cars allegedly returned in substandard condition.

The Baker Group does not challenge on appeal the district court's conclusion that the Article 14 conditions precedent were not satisfied. Accordingly, we affirm the dismissal of all claims relating to returned railcars.[3]

## The Indispensable Party Issue

On the eve of trial, the Baker Group filed a motion to dismiss the lawsuit without prejudice because CBC as Lessor was an indispensable party whose joinder would destroy the court's diversity jurisdiction. The motion was based on the final judgment in the Kansas action in which the court ruled that the judgment must be entered in favor of CBC, not the other plaintiffs, because CBC was the contracting party. Agreeing with BNSF that the purpose of the Kansas court ruling was only to determine the proper form of the judgment, the district court denied the motion to

---

[3]In their reply brief, the Baker Group argues for the first time that BNSF frustrated performance of the conditions precedent. We do not consider issues raised for the first time in a reply brief, particularly fact-intensive issues of this nature.

dismiss, concluding that the Baker Group continued to have standing and that CBC was not needed "to adjudicate this case." We review this ruling for abuse of discretion. See Steele v. Turn Key Gaming, Inc., 135 F.3d 1249, 1251 (8th Cir. 1998).

The first question is whether the absent party, here CBC, must be joined if joinder would not deprive the court of jurisdiction. See Fed. R. Civ. P. 19(a). If the absent party is a necessary party, as defined in Rule 19(a), but joinder is not feasible, then Rule 19(b) sets forth factors to apply in determining whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Rule 19(b) is a pragmatic rule whose application turns on considerations of efficiency and fairness in the particular case. See Pujol v. Shearson/American Express, Inc., 877 F.2d 132, 134 (1st Cir. 1989); see also Ranger Transp., Inc. v. Wal-Mart Stores, 903 F.2d 1185, 1187 (8th Cir. 1990).

Putting aside the Rule 19(a) issue, and viewing the Rule 19(b) issue from the dual perspective of fairness and efficiency, the Baker Group's motion to dismiss was without merit. Carle Baker, Jr. is the majority owner and chief executive officer of CBC and the Baker Group and is the trustee of the MTY Trust. All three entities joined in the Kansas action, but only the Baker Group and MTY joined in this action when it was filed in state court before being removed by BNSF. The amended complaint alleged that CBC entered into the Lease in its own interest and as broker for First Security, that the Baker Group purchased from First Security "certain ownership interest" in the railcars and the right to receive rental income under the Lease, and that CBC brought a separate action concerning its interest in the Lease in state court. Not until six years after the case was filed, after the district court made adverse rulings limiting the issues to be tried, did the Baker Group assert that CBC is an indispensable party and the suit must be dismissed without prejudice. It is hard to imagine a clearer case of abusive forum shopping. The Baker Group's appeal of this issue is frivolous.

-11-

## The Attorneys' Appeal

In Case No. 04-4124, attorneys Linus Baker and Laurence Jarvis urge us to expunge critical comments Judge Wright made about them in his June 21, 1999 final order dismissing the Baker Group's claims. The Baker Group appealed that order in Baker I, complained of the critical comments, and urged us to reassign the case to a different judge if we remanded. We denied that relief. 228 F.3d at 888. Linus Baker and Jarvis did not join in the Baker Group's first appeal or file a separate appeal at that time. In this circuit, an order sanctioning an attorney is appealable, and the appeal "must be filed within 30 days from the entry of the order." Hill v. St. Louis Univ., 123 F.3d 1114,1120 (8th Cir. 1997). Accordingly, we dismiss the appeal from Judge Wright's order as untimely.

If Judge Wright's comments did not amount to a sanction, they would not be appealable at all, except perhaps by writ of mandamus, which was not sought. As Judge Posner observed in Bolte v. Home Ins. Co., 744 F.2d 572, 573 (7th Cir. 1984), appellate review of every judicial scolding of an attorney would presage "a breathtaking expansion in appellate jurisdiction." Compare Butler v. Biocore Med. Tech., Inc., 348 F.3d 1163, 1166-69 (10th Cir. 2003), and cases cited. Though Judge Wright expressly stated that ethical violations *may* have occurred, he left resolution of that issue to the state disciplinary authorities. Linus Baker and Jarvis argue that the order was nonetheless a sanction that deprived them of liberty and property interests without due process of law because they were afforded no prior notice and opportunity to respond. Though the appeal is untimely, we note that the due process contention is frivolous. A judge's referral of possible ethical violations to an attorney discipline authority "is analogous not to a censure or reprimand but to an order to show cause why sanctions should not be imposed," following which the attorney will receive all process due. Teaford v. Ford Motor Co., 338 F.3d 1179, 1181 (10th Cir. 2003).

After our remand in <u>Baker I</u>, the Baker Group filed a motion asking Judge Gaitan to expunge Judge Wright's critical comments from the June 21, 1999 order. Judge Gaitan denied the motion, explaining that he "[did] not find the language objectionable or unduly critical of plaintiffs' counsel" and was "unwilling to second guess Judge Wright or to state that there was no basis for his comments." Order of September 28, 2001, at pp. 11-12. Linus Baker and Jarvis appeal that order, but their appeal briefs simply assume that we have jurisdiction to consider an appeal by them at this time. Judge Gaitan's order was not a sanction (if it was, the appeal would be untimely). These attorneys are not parties to the underlying lawsuit and therefore lack standing to appeal from the final judgment. In these circumstances, we dismiss this part of No. 04-4124 for lack of jurisdiction. Alternatively, if we have jurisdiction, we conclude that Judge Gaitan did not abuse his discretion in declining to disturb Judge Wright's prior order.

## Conclusion

We have carefully considered the other issues raised on appeal by the Baker Group and their attorneys and conclude that each is without merit. The judgment of the district court is affirmed. The appeal in No. 04-4124 is dismissed.

_____