NOT DESIGNATED FOR PUBLICATION

No. 120,846

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WARD-MEADE NEIGHBORHOOD
IMPROVEMENT ASSOCIATION,
*Appellant*,

v.

SOUTHSIDE CHRISTIAN PALACE CHURCH,
W.R. PORTEE EVANGELISTIC WORLD OUTREACH, INC.,
*Appellee.*


MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed December 13, 2019. Affirmed.


*Paul D. Post*, of Topeka, for appellant.


*John H. Hutton* and *Kathleen S. Harvey*, of Henson, Hutton, Mudrick, Gragson & Vogelsberg, L.L.P., of Topeka, for appellee.


Before HILL, P.J., MALONE and POWELL, JJ.


PER CURIAM:  The Ward-Meade Neighborhood Improvement Association (the NIA) sued to enforce three restrictive covenants it claimed applied to real property owned by Southside Christian Palace Church, W.R. Portee Evangelistic World Outreach, Inc. (the Church). The NIA also brought a nuisance claim against the Church and a claim of demolition by neglect, and it sought declaratory judgment that it could enforce the restrictive covenants. The district court granted summary judgment against the NIA on all

claims and the NIA appeals. For the reasons stated in this opinion, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In 1936, the Topeka Board of Education built Sumner Elementary School (the School). The School came to national attention as one of the segregated schools implicated in the landmark desegregation case *Brown v. Board of Education*, 347 U.S. 483, 74 S. Ct. 686, 98 L. Ed 873 (1954). In 1991, the School was placed on the National Register of Historic Places, and in 1996 the Topeka Unified School District 501 (U.S.D. 501) closed the School. The property at the center of this case consists of the real estate on which the School is located and the School building itself.

The Topeka and Shawnee County Public Library bought the School from U.S.D. 501, used it for storage, and later sold it to the City of Topeka (the City). In September 2002, as consideration for grant money to preserve the School, the City entered into a "declaration of historic preservation covenant" (the Declaration) with the Kansas State Historic Preservation Office (KSHPO). In the Declaration, the City agreed on behalf of itself and its successors and assigns "to maintain and preserve those exterior and interior features of the property identified as Conservation Areas." The Declaration also required the owner of the School "to assume the cost of continued maintenance and repair of the property so as to preserve the architectural, historical, and/or archeological integrity of the property and its materials . . . in order to protect those qualities that made the property eligible for listing in the National Register of Historic Places."

The City lacked funds to rehabilitate the School, which by that time was in a state of significant disrepair, and despite the 2002 grant money and the Declaration, the City did not make any substantial effort to preserve the School. In early 2009, the City decided to sell the School at public auction. Zaire Thomas, acting on behalf of the unincorporated

2

predecessor of the Church, bought the School. Bishop W.R. Portee, the inspirational leader of the Church, envisioned preserving the School so it could be used as a community center and human rights memorial. The Topeka City Council approved the sale on February 3, 2009, and the Church was incorporated the next month. The warranty deed transferring the School from the City to Thomas was dated March 2, 2009, and was recorded with the Shawnee County Register of Deeds on March 6, 2009. The warranty deed included the statement—capitalized and in bold font—**"SEE EXHIBIT 'A' ATTACHED HERETO FOR DEED RESTRICTIONS**." Exhibit A stated:

"1. Buyer understands and agrees that the subject property is subject to a certain historic preservation covenant as set forth in City of Topeka Contract No. 32398, as set out in Book 3694 Page 60, incorporated by reference as if fully set forth herein. Buyer understands that the proposed use shall be subject to and require the consent of the Kansas State Historic Preservation Officer (KSHPO) and may require the consent of the appropriate individual from the U.S. Department of Interior.

"2. The Buyer agrees an exhibit and visitor area will be placed within the Lobby entrance on the Southwest side of the existing building on the subject property which will commemorate the historic Sumner and Monroe Schools and be available to the public during normal hours of operation. Public tours of the building shall be available to the public upon reasonable requests. A deed restriction shall run with the land and shall be recorded upon closing describing this land as being available to the public for educational purposes subject to the Buyer's use of the property.

"3. Buyer, at no cost, shall make a meeting space available to accommodate the Ward Meade Neighborhood Improvement Association or its successors. Said meeting space shall be utilized for neighborhood meetings and shall be subject to the Buyer's use of the subject property. Written requests for meeting space must be made by prior notice and must be held at a reasonable time."

The "City of Topeka Contract No. 32398" referenced in the first paragraph is the Declaration. The NIA mentioned in the third paragraph had existed as an unincorporated entity since at least August 1992. Homeowners and residents of the Ward-Meade neighborhood are automatically members of the NIA, and the School falls within the

3

boundaries of the neighborhood. The NIA was incorporated in 2011 as a not-for-profit corporation organized under the laws of the State of Kansas with its principal place of business located in Shawnee County, Kansas.

Meanwhile, on March 5, 2009, Thomas transferred the School to the Church by quitclaim deed recorded in the Office of the Register of Deeds on June 2, 2009. Despite Portee's wish to rehabilitate the School for use as a community center and human rights memorial, the School remained in a state of continual disrepair. The Church unsuccessfully applied for two grants between 2009 and 2015, but it lacked the money to repair the School. Portee died in November 2015.

In late 2017, the Church spent over $13,000 repairing part of the roof at the School and replacing a weather vane removed by vandals. Unknown individuals had also stolen the copper wiring from inside the building, leaving it without electricity and in need of repair to the interior wiring. Although the School had some code compliance issues, a member of the Church worked with the City of Topeka Code Enforcement and all of the code compliance issues were eventually addressed. The Church also installed two exterior lights for security purposes.

On January 18, 2018, the NIA sued the Church in Shawnee County District Court. The NIA asserted that the general warranty deed created three deed restrictions with which the Church had to comply: (1) the historic preservation and maintenance set forth in the Declaration, hereinafter referred to as the historic preservation covenant; (2) the establishment of an exhibit and visitor area for public education, hereinafter referred to as the public education covenant; and (3) providing meeting space for the NIA, hereinafter referred to as the NIA meeting place covenant. The NIA alleged four claims for relief; the first three were claims that the Church violated the three covenants, and the fourth was a claim that the Church created and maintained a nuisance. The NIA sought monetary

4

damages and injunctive relief. In its answer, the Church raised multiple affirmative defenses, including that the NIA lacked standing to bring its claims.

The NIA then moved to amend its petition to seek declaratory judgment on its right to enforce the deed restrictions and to add a claim of "demolition by neglect." The Church responded that Kansas does not recognize "demolition by neglect," so adding that claim would be futile. The NIA conceded that it could find no Kansas cases recognizing demolition by neglect, but it argued that Kansas should follow other jurisdictions that do recognize this cause of action. The district court granted the motion to amend, finding that "the most prudent way of proceeding on this issue of first impression would be to permit the amendment then allow the parties to fully litigate the question in the District Court where a complete record can be made before any potential appellate review would be required on the issue."

On October 11, 2018, the NIA filed a motion for partial summary judgment. It sought summary judgment in its favor ruling that (1) three valid and continuing deed restrictions are restrictive covenants that encumbered the Church's ownership of the School; (2) the NIA has standing to enforce those restrictive covenants; (3) the NIA need not show monetary damages to seek relief; and (4) the Church is permanently enjoined from violating the restrictive covenants.

On October 15, 2018, the Church filed its cross-motion for summary judgment. The Church asserted that the "deed notations," as it termed them, did not oblige the Church to do anything. The Church alternatively argued that the historic preservation covenant expired in 2012 and the public education and NIA meeting place covenants were subordinate to the Church's use of the School. The Church also argued that the NIA lacked standing to enforce the historic preservation and public education covenants, the NIA meeting place covenant did not run with the land, and enforcement of the NIA meeting place covenant was barred by the doctrine of laches. The Church asserted that it

5

was entitled to summary judgment on the nuisance claim because the applicable statute of limitations barred the claim and the undisputed evidence failed to establish a successful claim. Finally, the Church argued that it was entitled to summary judgment on the demolition by neglect claim because Kansas does not recognize that cause of action.

Each party filed responses opposing the other's motion for summary judgment and largely reiterated the arguments made in their own motions. The district court held a hearing on the cross-motions on December 20, 2018. After hearing argument from the parties, the district court requested supplemental research from the parties on whether an association has standing to bring a nuisance claim.

On February 1, 2019, the district court issued its order denying the NIA's motion for partial summary judgment, granting the Church's motion for summary judgment, and granting summary judgment in the Church's favor on all of the NIA's claims. The district court first held "that the restrictions identified in the attachment to the general warranty deed form the basis for enforceable contractual rights and obligations with respect to successor sellers and purchasers." But the district court held that the NIA lacked standing to enforce the historic preservation and public education covenants, so it granted summary judgment in the Church's favor on those claims.

Although the district court held that the NIA had standing as a third-party beneficiary to enforce the NIA meeting place covenant, it granted summary judgment in the Church's favor "because the uncontroverted material facts establish that any right [for the NIA] to meet at the school free of cost is subject to [the Church's] current use." The district court noted that in July 2018, while the lawsuit was pending, the Church installed a new roof on the School, did general cleaning of the building, resolved a bat infestation, undertook repairs to prevent weather damage and further pest infiltration, and completed extensive tuck pointing. The district court noted that the Church still hoped "to make the repairs needed to open the building in accordance with the vision of the late Bishop

6

Portee," even though it acknowledged that it did not "have the estimated $7,000,000 needed to renovate" the School and that it "does not expect to see anything happen with regard to substantial renovations for at least the next 15 years."

The district court held that although the renovations currently are stalled and unfunded, the uncontroverted facts established as a matter of law that the Church's intended renovations constituted its "use" of the School. From the plain language of the third restrictive covenant, any meetings by the NIA at the School were subject and subordinate to the Church's "use." And because the renovation "use" rendered the building unsafe for meetings by the NIA and the renovations had priority over the meetings, the district court found as a matter of law that the Church was not violating the NIA meeting place covenant.

Turning to the nuisance claim, the district court examined both private and public nuisance theories of recovery. The district court found that participation of the individual members of the NIA who were landowners and who suffered injury from the alleged nuisance was essential to the NIA's nuisance claim. Because no such individual members were parties here, the district court determined that the NIA lacked associational standing to bring a private nuisance cause of action. Further, because governmental entities generally prosecute public nuisance actions and the NIA had not established why it should take the place of the City to do so, the district court held that the NIA lacked standing to bring a public nuisance claim.

The district court then noted that in the supplemental research provided to the court after argument on the motion, the NIA asked to add Deborah Edwards, the NIA president, as a plaintiff. The Church had objected to the amendment and the district court denied the request as it was untimely and because it "would unnecessarily subject the parties to additional litigation costs on an entirely new claim." In summary, the district

court entered summary judgment in the Church's favor on all claims and taxed costs to the NIA. The NIA timely appealed the district court's judgment.

CLAIMS INVOLVING RESTRICTIVE COVENANTS

The NIA argues that the district court erred as a matter of law by (1) holding that the NIA lacked standing to prosecute the historic preservation and public education covenants and (2) granting summary judgment on the claim related to the NIA meeting place covenant—the NIA argues that the "use" of the building was a disputed question of material fact. The Church responds that these rulings by the district court were correct.

*Arguments not properly before this court*

To begin with, we note that both the NIA and the Church devote significant portions of their appellate briefs to arguing points that are not properly before this court. For example, the NIA provides ample argument on the point that "[t]he undisputed evidence from the discovery records shows that there are three valid restrictive covenants which encumber Defendant's ownership of Sumner School." The NIA states that "[t]he question . . . is whether the obligations created in this Covenant . . . ceased to exist on September 11, 2012, i.e., ten years after the date that the Historic Preservation Covenant was signed." Meanwhile, the Church argues that the historic preservation covenant does not run in perpetuity.

But this point is not in contention on appeal. The district court held that "the obligation to preserve the quality of the property making the property eligible for being listed on the National Register of Historic Places runs with the land in perpetuity." The Church has not filed a cross-appeal, so it may not now challenge district court rulings. See *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 191, 106 P.3d 483 (2005) (holding that because the appellee "did not file a cross-appeal of this adverse ruling by the trial court[, i]t is therefore barred"); K.S.A. 2018 Supp. 60-2103(h). Thus,

8

the district court's holding that the historic preservation covenant runs with the land in perpetuity is not one that this court may review. Similarly, the district court held that there were three restrictive covenants and, since the Church has not cross-appealed, the NIA need not convince us that this ruling was correct.

Likewise, the NIA dedicates about one page of its appellate brief to arguing that it need not "demonstrate monetary damages to seek relief against" the Church. But the NIA fails to identify the location in the record where the district court held otherwise. This failure violates Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 35), which "states that each issue in an appellant's brief 'must begin with . . . a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on.'" See *Rockhill Pain Specialists v. Hancock*, 55 Kan. App. 2d 161, 177-78, 412 P.3d 1008 (2017), *rev. denied* 308 Kan. 1595 (2018).

The Church does not address monetary damages in its appellate brief. In its memorandum in support of summary judgment in the district court, the Church argued that it was entitled to summary judgment on the NIA's request for monetary damages because the NIA had provided no evidence that it had suffered such damages. But the district court did not address this point in its memorandum decision and order. And the NIA does not explain on appeal why this court should consider the issue. Our Supreme Court has held that when an appellant "directs us to no ruling by the district court [on an issue raised on appeal], and our search of the record has uncovered none . . . this court presumes the district court did not rule on [the] issue." *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 81, 274 P.3d 609 (2012). "Without a ruling from the district court on this issue, we cannot proceed with formless appellate review." 294 Kan. at 81. Thus, we need not address the NIA's arguments about monetary damages.

*Standards of review*

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought.'" [Citations omitted.]" *Peters v. Deseret Cattle Feeders*, 309 Kan. 462, 469, 437 P.3d 976 (2019).

"An appellate court reviews summary judgment de novo." 309 Kan. at 469. Similarly, "the existence of standing is a question of law over which an appellate court's scope of review is unlimited," as is the interpretation and legal effect of a written instrument. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 646-47, 298 P.3d 358 (2013).

> "'The rules governing the construction of covenants imposing restrictions on the use of realty are the same as those applicable to any contract or covenant, including the rule that, where there is no ambiguity in the language used, there is no room for construction, and the plain meaning of the language governs.' [Citation omitted.]" *South Shore Homes Ass'n v. Holland Holiday's*, 219 Kan. 744, 751, 549 P.2d 1035 (1976).

Standing is a "'party's right to make a legal claim or seek judicial enforcement of a duty or a right.'" *In re Adoption of T.M.M.H.*, 307 Kan. 902, 908, 416 P.3d 999 (2018). Parties to a contract generally have standing to enforce the contract, while nonparties generally do not. See *Bodine v. Osage County Rural Water Dist. # 7*, 263 Kan. 418, 428, 949 P.2d 1194 (1997).

The NIA does not argue that it was a party to either the Declaration or the general warranty deed that established the three relevant restrictive covenants, and the uncontroverted facts show that it was not. Thus, analysis of the NIA's standing requires applying the principles of third-party standing. "[P]arties are presumed to contract for

10

themselves, and their intent that a third [party] receive a direct benefit must be clearly expressed in the contract" for that party to be a third-party beneficiary to the contract and thus have standing to enforce it. See *Byers v. Snyder*, 44 Kan. App. 2d 380, 386-87, 237 P.3d 1258 (2010).

To have standing to enforce a contract, individuals or entities that are not parties to the contract "must show the existence of some provision in the contract that operates to their benefit." *Kincaid*, 48 Kan. App. 2d at 647-48. The contract need not name them as beneficiaries, but there must be "some provision in the contract that operates to their benefit." 48 Kan. App. 2d at 647-48. Such "[t]hird-party beneficiaries of a contract are divided into intended beneficiaries and incidental beneficiaries, and only intended beneficiaries have standing to sue for damages resulting from the breach of a contract." 48 Kan. App. 2d at 647. "To determine whether a particular person is an intended beneficiary of a contract, the court applies the general rules for construction of contracts"; this court considers and construes the contract as a whole and, if its terms are clear, this court determines the contracting parties' intent without applying rules of construction. 48 Kan. App. 2d at 647. The party asserting standing to sue as a third-party beneficiary bears the burden of establishing the standing to do so. 48 Kan. App. 2d at 647.

*The historic preservation covenant*

As stated above, the first restrictive covenant required the owner of the School

"to assume the cost of continued maintenance and repair of the property to as to preserve the architectural, historical, and/or archeological integrity of the property and its materials . . . in order to protect those qualities that made the property eligible for listing in the National Register of Historic Places."

11

The Declaration also provided that if the owner violated the covenant, the State could "institute suit to enjoin said violation or to require the restoration of the property to its condition at the time of this covenant, or condition at the time of the most recent satisfactory State inspection."

The district court held the State of Kansas, not the NIA, had standing to enforce the historic preservation responsibilities of the property's owner:

> "[The NIA] does not have standing to enforce the provisions of the Declaration which were incorporated into the first deed restriction of the warranty deed. The State of Kansas had and continues to have the right, duty and authority to enforce compliance with provisions of the Declaration to assure that '*the qualities of the property making the property eligible for being listed on the National Register of Historic Places*' are preserved. This authority has not been delegated to the NIA by the State of Kansas Historic Preservation Officer. The City of Topeka, of course, would have no right to delegate away the State's enforcement authority. Further, the State of Kansas, not [the NIA], had standing to '*maintain and preserve all those exterior and interior features of the property identified as the conservation areas . . .*' as contemplated within the first 10 years of operation under the Declaration as consideration for the grant funding. . . .
>
> ". . . [T]he Court finds and concludes, as a matter of law that, the obligation to preserve the quality of the property making the property eligible for being listed on the National Register of Historic Places runs with the land in perpetuity. Furthermore, the State of Kansas has the right, duty and authority to enforce the Historic Preservation Covenant. Paragraph 13 of the Declaration of Historic Preservation Covenant specifically provides that in the event of any violation the State may institute suit. Paragraph 16 of the Declaration provides that the failure of the State to exercise any right or remedy granted under the Declaration of Historic Covenant will not constitute a waiver of any other right or remedy. Thus, [the NIA] does not have standing to bring suit to enforce the Declaration of Historic Preservation Covenant which is referred to in the first deed restriction."

On appeal, the NIA argues that the district court erred in ruling that the NIA lacked standing to enforce the historic preservation covenant. Without providing supporting legal authority, the NIA insists that "[t]he three deed restrictions must . . . be read together, as each complements the other." Under this construction, the NIA contends that the Church's alleged violations of the historic preservation covenant have "directly resulted in [the Church's] inability to comply with" the third restrictive covenant that requires the Church to provide meeting space for the NIA. Essentially, the NIA wants to parlay its status as a named intended third-party beneficiary of the third restrictive covenant into standing to enforce the first and second restrictive covenants as well.

But this argument is not logical because the historic preservation covenant is not coextensive with the NIA meeting place covenant. Simply put, the Church could violate the historic preservation covenant by allowing the School to fall below the standards required for inclusion on the National Registry of Historic Places and simultaneously allow the NIA to meet at the School. The restrictive covenants do not address the same issue and standing to enforce one does not necessarily result in standing to enforce the other. Moreover, the NIA provides almost no relevant legal authority in support of its broad assertions on appeal.

The plain language of the historic preservation covenant authorizes the State of Kansas to bring suit to enforce the covenant, and it does not authorize another entity to do so. The NIA contends that the Declaration, which is the source of the historic preservation covenant, was concerned with maintaining the property's eligibility for placement on the National Registry of Historic Places, so that "[t]he intended involvement of the state of Kansas under the first deed restriction arise[s] only if the [Church] wants to *modify* the building in some manner which might cause the loss of the historic registry status." The NIA also generally asserts that "[t]he City of Topeka entrusted the enforcement of the [Church's] obligations to the [NIA] with this lawsuit being the vehicle by which the [NIA] chose to enforce those rights."

13

Again, the plain language of the covenant does not include or otherwise support the NIA's assertions. And, as the district court noted, this court has held that "when one of the contracting parties is a government entity and the contract is made for the general public benefit, members of the public are generally not considered third-party beneficiaries with standing to sue." *Byers*, 44 Kan. App. 2d at 387. The NIA bore the burden of establishing that it had standing to enforce the historic preservation covenant. Even resolving all facts and reasonable inferences in the NIA's favor, as this court must when reviewing a summary judgment ruling against the NIA, the NIA failed to meet this burden and the district court did not err in ruling that the NIA lacked standing to sue to enforce the historic preservation covenant.

*The public education covenant*

As stated above, the public education covenant was created by the following language incorporated in the general warranty deed:

> "The Buyer agrees an exhibit and visitor area will be placed within the Lobby entrance on the Southwest side of the existing building on the subject property which will commemorate the Historic Sumner and Monroe Schools and be available to the public during normal hours of operation. Public tours of the building shall be available upon reasonable request. A deed restriction shall run with the land and shall be recorded upon closing describing this land as being available to the public for educational purposes subject to the Buyer's use of the property."

Although the NIA argues generally that it has standing to enforce all three of the restrictive covenants, it devotes no specific argument to the district court's extensive findings on its lack of standing to sue to enforce the public education covenant. The Church points out this failure in its own appellate brief, and it asks this court to affirm the district court because the NIA has inadequately briefed any challenge to the district court's ruling that the NIA lacked standing to enforce the public education covenant.

14

As the Kansas Supreme Court recently reaffirmed, Kansas courts have long held that "[w]hen a litigant fails to adequately brief an issue, it is deemed abandoned." *Hill v. State*, 310 Kan. 490, Syl. ¶ 7, 448 P.3d 457 (2019), *motion for reh. filed* September 27, 2019; see also *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) ("'A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'"). Because the NIA has articulated no specific appellate challenge to the district court's ruling that it lacked standing to enforce the public education covenant, we find any such challenge waived and abandoned.

*The NIA meeting place covenant*

The general warranty deed incorporated the following:

"Buyer, at no cost, shall make a meeting space available to accommodate the [NIA] or its successors. Said meeting space shall be utilized for neighborhood meetings and shall be subject to the Buyer's use of the subject property. Written request for meeting space must be made by prior notice and must be held at a reasonable time."

The parties agree that in February 2013 and December 2017, the NIA sought the Church's permission to meet at the School, but the Church denied the request, stating that conditions at the School made it unsafe to do so. The district court held that the NIA had standing to bring a claim alleging the violation of the NIA meeting place covenant and, since the Church has not cross-appealed, the validity of that holding is not before this court. Nor do the parties dispute the district court's holding that the plain language of the NIA meeting place covenant "affords [the NIA] a right to free meeting space *subject to the use of the property by* [*the Church*]." (Emphasis added.) The dispute presently before this court centers on the district court's holding that "the uncontroverted material facts establish that any right to meet at the school free of cost is subject to [the Church's] current use." The district court held:

15

"Clearly, the language used in the third deed restriction conditions the availability of the meeting space upon the [Church's] use of the property. As stated above, *the project has been in a state of disrepair for many years and is in need of renovation with little or no resources available for undertaking the substantial cost of renovation necessary to open the building as a public memorial. The building is currently unfit to be used by [the NIA] for its meetings. [The NIA's] right to use the building is subject to the use of the [Church]. As the building is under renovation, such use by the [Church] trumps the right of [the NIA] to have its meetings in the facility until the renovation is complete* and then only as long as [the Church] is not using the building for another use that would not unreasonably exclude [the NIA] from the use of the facility as a meeting location." (Emphasis added.)

On appeal, the NIA asserts that the italicized portion of the language quoted above contains "two conflicting decisions" that "show [] without question that the evidence concerning 'use' of the building was in material dispute, yet despite that, the [d]istrict [c]ourt proceeded to weigh the evidence and determine that the [Church] was 'using' the building by virtue of its renovation of the building." The NIA's argument is far from clear, but it appears that the NIA objects to what it sees as a conflict between the district court's finding that (1) the School was unsafe, it had been in disrepair for a long time, and there was no money for renovations; and (2) the Church was "using" the school by performing renovations. The Church replies that the material facts as to its renovation efforts were not in dispute and the question here is one of law—whether its renovation efforts constituted "use" of the School.

"Summary judgment is appropriate only when the material facts are uncontroverted." *Nauheim v. City of Topeka*, 309 Kan. 145, 154, 432 P.3d 647 (2019). So if the NIA is correct that there was a factual dispute over whether the Church was performing renovations on the School, thereby "using" it for that purpose, the district court erred in granting summary judgment on this claim. But the record belies the NIA's assertion that "[t]here is no evidence that [the Church] has been doing any work at all towards renovating, refurbishing, and repurposing [the] School."

16

The district court made the factual finding that the Church "spent $13,525.00 repairing the roof on the tower portion of the [School] and repairing and replacing the weather vane in December 2017," and the Church had "[t]wo exterior lights . . . placed at locations outside of the [S]chool building for security purposes," which were still maintained by the Church when the district court ruled. With its summary judgment motion, the Church submitted evidence to the district court that supported these factual findings. """When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact.""" *Peters*, 309 Kan. at 469. But the NIA admitted in the district court that the Church had paid for the installation and the maintenance of the security lights. And the NIA does not identify to this court any evidence it submitted to the district court that controverted the Church's evidence of the roof work. Thus, there was uncontroverted evidence before the district court that the Church had undertaken at least some renovation and repair of the property.

The second thing that the NIA appears to be challenging is the district court's finding that this renovation constituted a "use" of the School to which the NIA's request for meeting space was subject. The NIA provides no legal authority to support its claim that long-term renovation is not an appropriate "use" of the School. Instead, it argues that the Church's rehabilitative actions were "repairs made in response to code enforcement violations and the filing of [this] lawsuit," which the NIA contends—again, without providing legal authority in support—cannot be interpreted as a "use" by the Church.

The NIA provides no citation to Kansas caselaw defining use in this context, and independent research did not discover such a definition. Generally, to "use" something is "[t]o put or bring [it] into action or service " and, in the legal field, "use" refers to "[t]he enjoyment of property, as from occupying, employing, or exercising it." Webster's New World College Dictionary 1592 (5th ed. 2014). The Church's renovation of the School fits within this definition of "use" and, absent legal authority showing that renovation cannot be a "use" of land, the district court did not err in finding that the Church's

17

renovations—sporadic as they may be—are a "use" of the land to which the NIA using the School for meeting space is subject.

So even resolving all facts and inferences in favor of the NIA, the uncontroverted material facts show that the Church is using the School for renovations. The renovations render the property unsafe for the NIA to use for meeting space and, as such, the district court did not err in granting summary judgment in the Church's favor on this claim.

NUISANCE CLAIMS

The district court held that the NIA lacked standing to bring a private nuisance claim or a public nuisance claim. Specifically, the district court held that the NIA could not bring a private nuisance claim or a private claim based on a public nuisance because it owned no land disturbed by the alleged nuisance. The NIA now argues that both rulings are erroneous and its lack of ownership of land does not divest it of standing.

*Private nuisance claim*

> """A nuisance is an annoyance, and any use of property by one which gives offense to or endangers the life or health, violates the laws of decency, unreasonably pollutes the air with foul, noxious odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another may be said to be a nuisance.
> """A private nuisance is a tort related to an unlawful interference with a person's use or enjoyment of his land. The concept of a private nuisance does not exist apart from the interest of a landowner."' [Citations omitted.]" *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 47, 169 P.3d 1052 (2007).

The NIA does not own land affected by the conditions at the School. It purports to bring its private nuisance claims on behalf of its members, who are landowners allegedly affected by the nuisance of the School.

"'For an association to have standing, . . . a three-prong test must be satisfied: "An association has standing to sue on behalf of its members when (1) the members have standing to sue individually; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires participation of individual members.'" [Citations omitted.]" *KNEA v. State*, 305 Kan. 739, 747, 387 P.3d 795 (2017).

The district court here held that the NIA met the first two prongs of this test. As for the third prong, however, the district court noted that the pursuit of a private nuisance claim requires a landowner to "show that the interference with the use of the landowner's land is substantial and unreasonable." Thus, the district court held, "an individual landowner's participation is required under a private nuisance theory," because "[t]he concept of private nuisance does not exist apart from the interest of the landowner," so the NIA lacked standing to bring the claim solely on behalf of its members.

The NIA argues on appeal that the Kansas Supreme Court "considered a private nuisance action" brought by a homeowners association in *Vickridge Homeowners Ass'n, Inc. v. Catholic Diocese of Wichita*, 212 Kan. 348, 510 P.2d 1296 (1973), and it "did not say in that decision that . . . a homeowner's association lacked standing to pursue a private nuisance claim on behalf of the members of the association." But, as the Church points out, associational standing was not at issue in *Vickridge*, and the Kansas Supreme Court did not address standing at all in that case. See 212 Kan. at 348-63. Contrary to the NIA's assertion to this court, we will not interpret the Kansas Supreme Court's silence on an issue not before it as it taking a position on that issue. As the NIA concedes, the plaintiffs in *Vickridge* were the homeowners association *and* "individual homeowners in the area." See 212 Kan. at 349. Thus, whether a homeowners association has standing to bring a private nuisance claim on behalf of its members in a case in which no members are named plaintiffs was not before the *Vickridge* court.

Second, the NIA points to *Klassen v. Creamery Co.*, 160 Kan. 697, 705, 165 P.2d 601 (1946), in which the Kansas Supreme Court held that lawful possession of land, even without legal title, is generally "sufficient to support an action for damages for interference with the lawful enjoyment of the premises by the person in possession." The NIA argues that under *Klassen*, it need not be a landowner to bring a private nuisance claim. But as the Church points out, *Klassen* addressed whether a lessee, who did not have title to the land, was still entitled to recover damages under a nuisance claim if he was affected by a nuisance during his tenancy. See 160 Kan. at 705. And other than derivatively through its landowning members, the NIA has asserted no interest at all in land that is allegedly affected by the School. Thus, *Klassen* does not establish that the NIA has associational standing to bring a private nuisance claim.

The district court did not err in concluding that the NIA failed as a matter of law to establish that a private nuisance claim did not require participation of its individual members. Simply put, to bring a private nuisance claim, a plaintiff must have some articulable and direct interest in land with which the alleged nuisance interferes, whether that be as a tenant or the owner of the land. See *Smith*, 285 Kan. at 47; *Klassen*, 160 Kan. at 705. Put another way, "[t]he remedy for [private nuisance] lies in the hands of the individual landowner whose rights have been disturbed." *Culwell v. Abbott Construction Co.*, 211 Kan. 359, 362, 506 P.2d 1191 (1973).

Even construing all facts and drawing all reasonable inferences in the NIA's favor, as this court must do when reviewing the district court's ruling on summary judgment, the only relevant interest the NIA identified in any land affected by the alleged nuisance was the interest of its landowner members in the enjoyment of their land. Thus, the NIA's private nuisance claim required participation of its individual members. Under the test set out in *KNEA*, this means that the NIA lacked associational standing to bring the claim on behalf of its members. See *KNEA*, 305 Kan. at 747. The district court did not err in so holding.

20

*Public nuisance claim*

> "'A public nuisance is an unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property.' 'A public nuisance is one which annoys an entire community.' [Citations omitted.]" *State ex rel. Graeber v. Marion County Landfill, Inc.*, 276 Kan. 328, 342, 76 P.3d 1000 (2003).

The NIA argues that the district court improperly weighed the evidence before it on whether a public nuisance existed. But this court need not consider those arguments, as the district court did not base its ruling on whether a public nuisance existed. Rather, the district court held that the NIA lacked standing to bring a private claim of public nuisance. The Kansas Supreme Court has

> "uniformly held that a private individual has no action for the invasion of a purely public right, unless his damage is in some way to be distinguished from that sustained by other members of the general public. It is not enough that he suffers the same inconvenience or is exposed to the same threatened injury as everyone else. In the absence of some peculiar individual injury redress for a public nuisance must be left to the appointed representatives of the community." *Culwell*, 211 Kan. at 363-64.

The district court here acknowledged this holding and pointed out that the undisputed evidence before it showed that the City of Topeka had enforced building and property codes in the past. The NIA argues that as "an organized community neighborhood association," it is an "appointed representative of the community" that may bring a public nuisance claim. While this is an interesting argument, the NIA provides no legal authority to support it. And there is caselaw to the contrary.

As far back as 1887, the Supreme Court of Kansas held that "[a] public nuisance can only be redressed by a public prosecution, unless the party complaining suffers some peculiar damages differing in kind from those sustained by the public at large." *School*

*District v. Neil*, 36 Kan. 617, Syl. ¶ 2, 14 P. 253 (1887). In that case, the Kansas Supreme Court held that a school district could not prosecute a public nuisance claim and if the school district "was damaged by a public nuisance which it sought to abate, then the public should take steps to abate it through the public officers," not through suit brought by the school district itself. 36 Kan. at 620. Similarly, in 1919, Drainage District No. 3 of Sedgwick County brought a claim of public nuisance but "fail[ed] to allege or show that the plaintiff or any landowner of the district suffer[ed] a loss or injury peculiar to them and differing in kind from that sustained by the general public." *Drainage District v. Drainage District*, 104 Kan. 233, 236, 178 P. 433 (1919). The Kansas Supreme Court held that such a claim "should be brought in the name of the state, by the county attorney, or the attorney-general." 104 Kan. at 236.

"'A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.'" *McCain Foods USA, Inc.*, 275 Kan. at 15. Because of the NIA's failure to expand upon its assertion that it constitutes an "appointed representative of the community" that may prosecute a public nuisance claim and its failure to address existing caselaw that at the least appears to contradict that assertion, this court will not delve any more into the merits of the argument.

The district court also held that the NIA could not bring a private claim based on public nuisance because it had alleged no particular injury beyond the harm the general public suffered from the School's disrepair. The NIA does not argue on appeal that it suffered any injury different than that suffered by the general public. Because *Culwell* requires that an entity asserting a private claim for public nuisance must allege a particular harm beyond that suffered by the general public, the district court did not err in concluding that the NIA lacked standing to bring a public nuisance claim on its own behalf. To the extent that the NIA intended to bring its public nuisance claim on behalf of its members, the district court correctly held that its associational standing to do so

22

suffered from the same flaw as with its claim of private nuisance—any such claim would require participation by individual members.

*The "material fact" of whether the School constituted a nuisance*

Finally, the NIA argues that the district court erred by "ventur[ing] forward and attempt[ing] to weigh" disputed facts related to the fact question of whether the School constituted a nuisance. But the district court did not do so. It held that on the relevant undisputed material facts, the NIA lacked standing to bring public or private nuisance claims. It did not determine whether a nuisance existed, and the NIA's lack of standing made reaching the factual nuisance issue unnecessary. "Without a ruling from the district court on this issue, we cannot proceed with formless appellate review." *Manhattan Ice & Cold Storage*, 294 Kan. at 81. Accordingly, this court need not address the NIA's arguments about the factual nature of whether something constitutes a nuisance.

CLAIMS FOR DEMOLITION BY NEGLECT AND FOR DECLARATORY RELIEF

The district court granted the NIA's motion to amend its petition to add language requesting that a declaratory judgment be entered and to add a claim of "demolition by neglect." Although the Church argued that adding a claim of "demolition by neglect" would be futile since that cause of action is not recognized under Kansas law, the district court held that "the most prudent way of proceeding on this issue of first impression would be to permit the amendment then allow the parties to fully litigate the question in the District Court where a complete record can be made before any potential appellate review would be required on the issue." Thus, the district court allowed the amendments.

*Demolition by neglect*

The Church addressed the claim of demolition by neglect in its motion for summary judgment. It argued that the cause of action does not exist in Kansas and the

23

jurisdictions that do recognize a claim of demolition by neglect apply it only when there is a breach of state law or city ordinances. The Church contended that the NIA's claim of demolition by neglect was "not based on any breach of Kansas law or City of Topeka ordinances," so even if Kansas recognized such a cause of action, the Church would still be entitled to summary judgment in its favor.

In its response to the Church's motion for summary judgment, the NIA argued that the district court should allow it to pursue its claim of demolition by neglect. It acknowledged that it had found no Kansas caselaw recognizing demolition by neglect, but it again pointed to other jurisdictions that have done so. Moreover, the NIA asserted that the undisputed code violations at the School satisfy any requirement that the property in question violated the law.

The district court did not address the demolition by neglect claim in its memorandum decision and order. The NIA fails to acknowledge this fact in its appellate briefing of this issue, which is nearly identical to its written argument to the district court. The NIA also failed to object in the district court to the omission of this argument from the district court's memorandum decision and order. "A party 'has the obligation to object to inadequate findings of fact and conclusions of law in order to preserve an issue for appeal because this gives the trial court an opportunity to correct any findings or conclusions that are argued to be inadequate.' [Citations omitted.]" *In re Adoption of T.M.M.H.*, 307 Kan. at 918. Arguably, the NIA's failure to object in the district court or otherwise draw the district court's attention to its omission of the demolition by neglect claim precludes this court's review. See *Deters v. Nemaha-Marshall Electric Cooperative Ass'n*, 56 Kan. App. 2d 1170, 1186, 443 P.3d 1086 (2019) (noting that a party's failure to object to a district court's apparent omission of an asserted basis for summary judgment "[p]erhaps" leaves the argument unpreserved for appellate review).

24

Assuming the demolition by neglect claim is properly before this court, the NIA's request that we recognize that cause of action for the first time is not compelling. "Whether to adopt or recognize a new cause of action falling within the common law of tort or negligence is a question of law over which we have unlimited review." *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 203, 4 P.3d 1149 (2000).

The NIA fails to articulate proposed elements of "demolition by neglect" or otherwise detail what should constitute a claim for demolition by neglect in Kansas. It is axiomatic that a party advocating for Kansas courts to recognize a new cause of action must at least specifically describe that new cause of action. And "[w]hen a litigant fails to adequately brief an issue, it is deemed abandoned." *Hill*, 310 Kan. 490, Syl. ¶ 7.

The NIA asserts that New York "supports the concept" of demolition by neglect, pointing to a New York case that the NIA asserts "practically mirror[s]" the case now before this court. But *City of New York v. Seguine Bay Estates LLC*, 54 Misc. 3d 1204(A), 2016 WL 7637496, at *13 (N.Y. Sup. Ct. 2016) (unpublished opinion), does not recognize "demolition by neglect" as a cause of action, especially between two private parties, as the NIA seeks to implement it in Kansas. In that case, the City of New York and The Landmarks Preservation Commission asked the district court to compel the defendants "to comply with the order of the Landmarks Commission issued pursuant to [a provision of the New York City Administrative Code] to maintain in good repair the building known as 509 Seguine Avenue, Staten Island, New York." 2016 WL 7637496, at *1. The defendants opposed the application for an injunction, arguing that the premises were unsafe and should be demolished.

The NIA quotes to this court a portion of the opinion in which the New York court explained:

25

"'[D]emolition by neglect' . . . occurs when a landowner, who is more interested in the 'land' rather than the 'landmark,' does little or no maintenance on a landmarked property and relies on either 'mother nature' or vandalism or a 'fortunate fire' to continue to cause the building to deteriorate in the hope that the building will fall into such disrepair that it will either 'self-destruct' or have to be demolished. Either scenario would then free the owner to develop the property in a more profitable manner." 2016 WL 7637496, at *15.

But the language quoted above appears in the opinion after the trial court granted the application for a permanent injunction. 2016 WL 7637496, at *13, 15. When read in context, the language in the opinion that NIA points to is the trial court's musings on "problems inherent with [New York's] landmarks law," including the observation that "'demolition by neglect' is a recurring problem" and "is the landmark law's equivalent of 'Nero fiddling while Rome burns.'" 2016 WL 7637496, at *15. Despite the NIA's assertion here, the language does not recognize an independent cause of action for "demolition by neglect."

Similarly, the plaintiffs in the other New York case the NIA cites—also the City of New York and the New York City Landmarks Preservation Commission—did not bring a *claim* of "demolition by neglect." See *City of New York v. 10-12 Cooper Square, Inc.*, 793 N.Y.S.2d 688, 691 (2004). Rather, they sought an order "to compel the defendants to undertake such work as is necessary" to maintain and repair the landmarked building as required under city ordinances related to landmarked buildings. 793 N.Y.S.2d at 689-91. Although the trial court acknowledged that the plaintiffs "characterize[d] defendants' conduct as 'demolition by neglect,'" this acknowledgment is different from recognizing "demolition by neglect" as an independent cause of action. The third case the NIA cites also arose not on a demolition by neglect cause of action under demolition, but on an appeal from an administrative granting of a demolition permit. See *District of Columbia Preservation League v. Department of Consumer and Regulatory Affairs*, 646 A.2d 984, 985-86 (D.C. 1994).

26

A review of the cases the NIA cites shows that other jurisdictions may recognize the concept of "demolition by neglect," which occurs when the owner of property fails to satisfy a legal obligation to maintain the property and thus allows the property to "self-destruct" to the point that it is essentially demolished. This concept was relevant in the New York cases because the landowners argued that they should not have to remediate property that was essentially demolished. The plaintiffs in each case argued that the landowners should not be able to benefit from the "demolition by neglect" to avoid their preservation obligations and render the land suitable for other development.

But contrary to the NIA's assertions, "demolition by neglect" does not appear to be an independent cause of action or the basis for an independent claim. Here, the NIA sought to add its "demolition by neglect" action to its claim that the Church had violated the restrictive covenant requiring the historic preservation of the School. As explained above, the district court correctly held that the NIA lacked standing to bring that claim. And the resolution of the standing issue remains the same whether the NIA argues that the Church allowed the School to be "demolished by neglect" or it argues another legal theory. No matter the theory, the NIA lacks standing to make it. Thus, because the district court was correct in dismissing the claim for lack of standing, the NIA's appellate argument that it should have been allowed to argue "demolition by neglect" is moot.

*Declaratory judgment*

Although the district court's memorandum decision and order acknowledged the NIA's request for declaratory relief, the district court did not articulate any analysis of the request, simply stating in its conclusion that it

> "denie[d] [the NIA]'s Motion for Partial Summary Judgment for a declaratory judgment and injunctive relief on its first three causes of action based on deed restrictions contained in the deed transferring the Sumner School from the City of Topeka to [the Church]. The Court enters summary judgment in favor of [the Church] against [the NIA] on all claims."

27

On appeal, the entirety of the NIA's argument about declaratory judgment consists of four sentences that are identical to a portion of its response in the district court to the Church's motion for summary judgment. The NIA quotes the language of K.S.A. 60-1704, which states that "[a]ny person having an interest under a deed . . . may obtain a declaration of rights, status or other legal relations thereunder." The NIA then contends:

> "The statute is plain and unambiguous, and gives [the NIA], which clearly 'has an interest under a deed,' a right to request declaratory relief. [The Church's] argument that [the NIA] should have joined the State of Kansas Historic Preservation Office is without merit, since that entity has no interest in the deed."

Yet the NIA does not articulate an argument that the district court erred in denying its request for declaratory judgment. It does not acknowledge that denial in this portion of its brief, nor does it argue that the district court's findings were inadequate or erroneous. "Issues not adequately briefed are deemed waived or abandoned. This includes 'point[s] raised only incidentally in a brief but not argued there.'" *Russell v. May*, 306 Kan. 1058, 1089, 400 P.3d 647 (2017). The mere inclusion in an appellate brief of an argument made to the district court without explaining how the district court erred in analyzing that argument is insufficient. The NIA does not identify the nature of declaratory relief it sought—which is left unclear by the record on appeal—nor does it explain how the district court erred by not granting that relief. By this failure, the NIA has abandoned this issue on appeal.

THE NIA'S REQUEST TO JOIN AN ADDITIONAL PLAINTIFF

In its final issue, the NIA argues that the district court erred by denying its "request" to "amend to include Deborah Edwards as a party plaintiff." The district court explained in its memorandum decision and order:

"At the close of oral argument on the parties' cross-motions for summary judgment, the Court requested additional submissions from both parties with regard to the issue of Plaintiff's standing to bring a nuisance claim. Plaintiff submitted its letter brief on January 10, 2019. In Plaintiff's submission[,] the NIA maintains it has standing to bring an action on a private nuisance as well as a public nuisance. Notwithstanding, Plaintiff suggested adding as a party Deborah Edwards, the President of the NIA. Ms. Edwards is nominated as a property owner with four properties within one block of Sumner School. In making the request to add Ms. Edwards, Plaintiff does not concede it lacks standing as an association to prosecute this action as a private or public nuisance action or as a private action upon a public nuisance.

"In Defendant's letter brief submitted on January 11, 2019, Defendant asserted an objection to adding a new party at this late date in the litigation. Defendant points out that the request is made more than six months past the July 2, 2018 deadline set in the Agreed Third Amended Case Management Order for amendments or addition of parties. Defendant suggests it would suffer prejudice by adding an entirely new yet unarticulated claim to this lawsuit which would require the reopening of discovery. In this regard, the discovery deadline was already extended twice by this Court to October 1, 2018. Further, it is noted that Ms. Edwards was deposed earlier in this action. It is further noted as being uncontroverted that any past City Property and Building Code issues at Sumner School had been remediated as of the close of discovery on October 1, 2018. It is not suggested in Plaintiff's letter briefing when or what peculiar individual injury may be alleged to have been suffered by Ms. Edwards in the past and how she has suffered damages.

"Plaintiff's request to add Deborah Edwards as a party is untimely as set out in the case management order and would unnecessarily subject the parties to additional litigation costs on an entirely new claim. The motion to add Ms. Edwards in Plaintiff's January 10, 2019 letter to the Court is denied."

The district court added in a footnote that neither party had filed its letter with the Clerk of the District Court, so the district court itself would "file both letters so that they are part of the record." The district court's register of actions reflects that the district court filed the parties' letters on January 25, 2019. In its argument on this issue, the NIA does not point to a location in the record at which this court may find its letter—which appears

to be the only documentation of its request to add Edwards as a plaintiff. And the record on appeal does not contain those letters.

As the appellant, the NIA "has the burden to designate a record sufficient to establish the claimed error; without such a record, the claim of error fails." See *City of Mission Hills v. Sexton*, 284 Kan. 414, 435, 160 P.3d 812 (2007). The NIA's failure to include in the record on appeal its request to add Edwards as a plaintiff renders it impossible for this court to evaluate fairly the NIA's arguments. For example, the NIA argues that Edwards would not have brought a "new claim." But this court has no way to know how Edwards' proposed claim was represented to the district court. And without the arguments to the district court, this court has no way of evaluating the NIA's appellate assertion that adding Edwards as a plaintiff "would not have prejudiced" the Church.

Kansas appellate courts review a district court's ruling on a motion to amend for abuse of discretion. *Alain Ellis Living Trust v. Harvey D. Ellis Living Trust*, 308 Kan. 1040, 1045, 427 P.3d 9 (2018). But without the information and arguments that were in front of the district court when it made that ruling, we cannot determine whether the district court abused its discretion. Because it was the NIA's burden to provide this court with a record sufficient to enable appellate review and the NIA failed to do so, the NIA's arguments on this point fail. See *City of Mission Hills*, 284 Kan. at 435.

Affirmed.